Lisa Goodpaster RIGGS

v.

Kenneth Lee RIGGS.

Court of Appeals of Tennessee,
at Nashville.

Sept. 12, 2007 Session.

Nov. 16, 2007.

Permission to Appeal Denied by
Supreme Court Jan. 23, 2008.

Timothy K. Barnes and Gregory D. Smith, Clarksville, Tennessee, for Appellant.

Chadwick W. Stanfill, Nashville, Tennessee, for Appellee.

## OPINION

W. FRANK CRAWFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S. and DAVID R. FARMER, J., joined.

This case involves a divorce ending a twenty-eight year marriage. Wife/Appellee was awarded a divorce on grounds of Husband/Appellant's inappropriate marital

conduct. The trial court found that Wife/Appellee had "no ability to earn income," and awarded Wife/Appellee alimony *in futuro* and attorney fees. Husband/Appellant appeals. Finding that Wife/Appellee has the ability to earn income, we reverse the award of alimony *in futuro*, and remand for determination of rehabilitative alimony and/or transitional alimony. Reversed in part, affirmed in part, and remanded.

Lisa Goodpaster Riggs ("Wife," or "Appellee") and Kenneth Lee Riggs ("Husband," or "Appellant") were married on June 21, 1978.[1] The parties separated on October 1, 2003. On November 18, 2004, Ms. Goodpaster filed a Complaint for Divorce against Mr. Riggs in the Circuit Court at Davidson County. As grounds, Ms. Goodpaster asserted irreconcilable differences and/or inappropriate marital conduct. On November 23, 2004, the trial court entered a Restraining Order, restraining Mr. Riggs "from coming about WIFE pending further orders of the Court." On January 25, 2005, the trial court ordered Mr. Riggs to pay *pendente lite* support to Ms. Goodpaster. Specifically, Mr. Riggs was ordered to pay all mortgage and utility bills on the marital residence, and $175.00 per week in *pendente lite* alimony, beginning February 17, 2005. Mr. Riggs was also ordered to pay Ms. Goodpaster $450.00 "for the payment of any fees in conjunction with [Ms. Goodpaster] obtaining and keeping her real estate license." The *pendente lite* Order also allows Mr. Riggs use of the marital residence (without Ms. Goodpaster being present) every Sunday from 11:00 until 6:00. On July 8, 2005, Ms. Goodpaster filed a motion to discontinue Mr. Riggs's use of the marital residence. In her motion, Ms. Goodpaster alleges that Mr. Riggs had damaged certain property and had read her personal writings. Thereafter, the parties entered into an agreed order discontinuing Mr. Riggs's use of the marital residence.

On November 10, 2005, Mr. Riggs filed his answer to Ms. Goodpaster's complaint and a counter-complaint for divorce, also citing inappropriate marital conduct and/or irreconcilable differences. On November 10, 2005, Ms. Goodpaster filed her answer to the counter-complaint. The case was tried to the court, sitting without a jury, on September 12, 2006. On November 30, 2006, the trial court entered its Final Divorce Decree. The Decree grants Ms. Goodpaster a divorce on grounds of inappropriate marital conduct on the part of Mr. Riggs. The trial court specifically finds that Ms. Goodpaster is a battered wife. Concerning alimony, the trial court ruled as follows:

> It is **ORDERED, ADJUDGED AND DECREED** that the Wife is awarded alimony in futuro in the amount of $1,200.00 per month, as she comes before the Court in this 28–year marriage with absolutely no ability to earn income and is in need of support. The Husband has the ability to pay alimony in that he makes approximately seventy thousand ($70,000.00) dollars a year. It is ordered that the payment of said alimony shall commence one month after the sale of the marital residence.

> \* \* \*

> It is **ORDERED, ADJUDGED AND DECREED** that the Wife is awarded a judgment in the amount of $5,000.00 against Husband for the reimbursement of part of her attorney's fees. It is

---

**1.** On December 19, 2006, the trial court entered an order allowing Lisa Goodpaster Riggs to return to her maiden name. Consequently, for purposes of this appeal, she will be referred to as Ms. Goodpaster.

ordered that this judgment shall be paid from the Husband's 40% of the equity proceeds from the sale of the marital residence.

Mr. Riggs appeals and raises three issues for review as stated in his brief:

I. The trial court erred in finding that Wife had no ability to earn an income in this case.

II. The trial court erred in awarding Wife alimony.

III. The trial court erred in awarding Wife attorney fees.

We first note that, because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. *See* Tenn. R.App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.Workers Comp.Panel, 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.; see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

■■■ Tennessee law recognizes several separate classes of spousal support, including long-term spousal support (alimony *in futuro* ),[2] alimony *in solido*,[3] rehabilitative spousal support,[4] and transitional spousal support.[5] T.C.A. § 36–5–121(d)(2) (2005) reflects a statutory preference favoring rehabilitative spousal support and transitional spousal support over long-term spousal support. *See also Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn.2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn.2003); *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). However, this statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn.1995).

■■■ Because the amount, if any, and type of alimony to be awarded is within

---

2. Long-term spousal support is intended to provide long-term support to an economically disadvantaged spouse who is unable to be rehabilitated. *Burlew v. Burlew,* 40 S.W.3d 465, 471 (Tenn.2001); *Loria v. Loria,* 952 S.W.2d 836, 838 (Tenn.Ct.App.1997). It is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse. *Wright v. Quillen,* 83 S.W.3d 768, 773 (Tenn.Ct.App. 2002).

3. Alimony in solido is a single lump sum payment of cash or property. *Loria v. Loria,* 952 S.W.2d 836, 838 (Tenn.Ct.App.1997). Unlike alimony *in futuro,* it is considered a final judgment, ordinarily unchangeable by the court after the expiration of the time for appeal. *Id.* at 838.

4. Rehabilitative spousal support is intended to enable an economically disadvantaged spouse to acquire additional education or training that will enable the spouse to achieve and maintain a standard of living comparable to the standard of living that existed during the marriage or to the post-divorce standard of living expected to be available to the other spouse. T.C.A. § 36–5–121(e)(1); *see also Robertson v. Robertson,* 76 S.W.3d 337, 340–41 (Tenn.2002); *Smith v. Smith,* 912 S.W.2d 155, 160 (Tenn.Ct.App.1995).

5. Transitional spousal support is paid for a definite duration when a court finds that rehabilitation is not necessary but that the economically disadvantaged spouse needs assistance adjusting to the economic consequences of divorce. T.C.A. § 36–5–121(g)(1).

the sound discretion of the trial court in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. *Lindsey v. Lindsey,* 976 S.W.2d 175, 180 (Tenn.Ct.App.1997). Under T.C.A. § 36–5–121(i), relevant factors to be considered in deciding whether to award alimony include:

(1) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property as defined in § 36–4–121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Among these factors, the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn.2002); *Bogan v. Bogan,* 60 S.W.3d 721, 730 (Tenn. 2001); *Sullivan v. Sullivan,* 107 S.W.3d 507, 510 (Tenn.Ct.App.2002). Of these two factors, the disadvantaged spouse's need is the threshold consideration. *Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn.1995); *Watters v. Watters,* 22 S.W.3d 817, 821 (Tenn.Ct.App.1999).

As note above, in the instant case, the trial court specifically found that Ms. Goodpaster has "absolutely no ability to earn income as of the day of this trial." We have reviewed the record and conclude that the evidence therein preponderates against this finding. It is undisputed that Ms. Goodpaster has held a real estate license since 2004. Ms. Goodpaster testified that she neither showed nor sold any property before voluntarily retiring her license approximately one year after procuring it. While we concede that it does cost money to get started in the real estate business, in the opinion of this Court, that hurdle does not call for long-term alimony. Rather, rehabilitative or transitional alimony would allow Ms. Goodpaster the funds necessary to get to a place where she can actually use her license for income. This is a fact that the trial court concedes in its ruling from the bench: "[Ms. Goodpaster]

does have some potential in her real estate license if she can get enough funds to be able to get in the business. And if she joins a real estate firm and has enough money to pay her expenses and her advertising, hopefully she can realize some substantial income from that." We agree with this assessment; however, the length and amount of rehabilitative and/or transitional alimony necessary to accomplish this goal cannot be gleaned from the record as it currently stands. During the hearing in this matter, Ms. Goodpaster's attorney attempted to solicit testimony from Jean Maze, a real estate agent who has been in business for many years, concerning start-up expenses; however, the trial court cut the testimony short, to wit:

> THE COURT: Well, I think I can take judicial notice, having dealt with a lot of realtors in my life.
>
> It is expensive. You have to pay your license, you have to pay your advertising. You do have to have a decent car to take people around, if you're successful.
>
> So you really don't need to prove that to me.
>
> MR. STANFILL: Okay.
>
> THE COURT: Very, very expensive to get into the real estate business.
>
> But that's what she's [Ms. Maze] is here for.
>
> MR. STANFILL: That's what she's here for, and I just want to make sure I've made a good record.
>
> THE COURT: I think that if both of you think, you both know that, too.
>
> MR. STANFILL: Okay. I just want to try to make a good—
>
> THE COURT: I'd like for you to argue things that make sense to me and not things that are ridiculous, which are why she [Ms. Goodpaster] can't make money doing real estate. As I think she said,

she don't [sic] have money to pay the expenses, advertising. She has no car to show the people around in.

> MR. STANFILL: Okay.
>
> THE COURT: I mean—I've heard that so many times in my career up here, and as well as in real life, that it is a fact you've got to have money to get started.
>
> MR. STANFILL: Okay.
>
> THE COURT: But I'll let her testify.
>
> MR. STANFILL: Well, if Your Honor wants to take judicial notice of that, I won't go ahead and question her. I just wanted to have—preserve the record. I mean, if Your Honor is taking judicial notice, I don't have anything else of Ms. Maze.
>
> THE COURT: Well, let her be cross-examined, then.

The problem with the record as it currently stands is that, while we know that it takes start-up money to get into the real estate business, we do not know the specifics of how much. Had such evidence been elicited from Ms. Maze, then perhaps the trial court (or this Court) could have fashioned a reasonably necessary rehabilitative and/or transitional alimony award, which would give Ms. Goodpaster the means and motivation necessary to earn an income.

In addition to her real estate license, the record reveals that Ms. Goodpaster and her mother started an organic candy business. However, Ms. Goodpaster discontinued work on that endeavor when her mother died. Nonetheless, she testified at the hearing that the candy business "showed great promise," that the business is still ongoing, and that she is "working to get it back up and going." Ms. Goodpaster also testified that she "still believe[s] [the candy business] can succeed."

In looking at the T.C.A. § 36-5-121(i) factors, *supra*, this was a twenty-eight year marriage. At the time of the divorce,

Ms. Goodpaster was forty-nine years old. Although she testified that she suffers from irritable bowel syndrome ("IBS"), there is no medical, or other, evidence in record from which to determine how debilitating this syndrome is. Ms. Goodpaster testified that "some days are better than other," but that her condition is chronic. Nonetheless, there is evidence in the record to support a finding that Ms. Goodpaster is able-bodied. By her own testimony, she is able to travel, and to enjoy a social life. There are numerous photographs in evidence, showing Ms. Goodpaster socializing with friends in New Orleans.

Both parties to this marriage share fault in its demise. Mr. Riggs and Ms. Goodpaster both admit to at least one affair each during the course of the marriage. The fact that Ms. Goodpaster's affair occurred during the time the parties were separated does not negate the fact that she was still married at that time. However, even if we concede that Mr. Riggs is more at fault here than Ms. Goodpaster due to the verbal and physical abuse during the marriage, that is merely one factor to be considered in determining the type and amount of alimony. From the totality of the circumstances in this case, we conclude that, with the aid of rehabilitative and/or transitional alimony, Ms. Goodpaster ultimately has the ability to support herself. During the hearing, Ms. Goodpaster stated that she "can do just about whatever [she has] to do," and that she is "certainly capable of making minimum wage." We agree. However, the award of alimony *in futuro* robs her of any motivation to seek self-sufficiency. Consequently, we reverse this award. As noted above, from the record, we cannot fashion a reasonable award of rehabilitative and/or transitional alimony. In order to do so, it is necessary to determine the funds needed to get Ms. Goodpaster's real estate and/or candy businesses off the ground. It is also necessary

to determine the degree, if any, of disability associated with Ms. Goodpaster's IBS. Therefore, we remand the matter to the trial court to make such determination and to fashion a reasonable award of rehabilitative and/or transitional alimony in this case. The trial court should also consider the length of time Ms. Goodpaster has been receiving the benefits of the alimony without any corresponding attempt to help herself.

### *Alimony in solido*

■■■ Mr. Riggs also contests the award of attorney's fees to Ms. Goodpaster in this case. It is well settled that an award of attorney fees constitutes alimony *in solido*. See *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn.Ct.App.1996). The decision whether to award attorneys' fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn.Ct.App. 1995); *see also* Tenn.R.App. P. 13(d). As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the relevant factors enumerated in T.C.A. § 36–5–101(d). A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys' fees and expenses. *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn.Ct.App.1997); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct.App.1984). These awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn.Ct.App.1992), or would be required to deplete his or her resources in order to pay these expenses. *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn.Ct.App.1980). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the

husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.Ct. App.1980); *Palmer v. Palmer,* 562 S.W.2d 833, 839 (Tenn.Ct.App.1977); *Ligon v. Ligon,* 556 S.W.2d 763, 768 (Tenn.Ct.App. 1977). In the instant case, we conclude that the factors necessary to award alimony *in solido* are met. At the time of the divorce, Ms. Goodpaster had no employment, nor immediate means to procure same. Mr. Riggs was making over seventy thousand dollars per year. Based upon the division of property in this case, it appears that, in order to pay all of her own attorney's fees, Ms. Goodpaster would have to deplete what resources she has. Consequently, we conclude that the award of attorney's fees in this case should stand. In her brief, Ms. Goodpaster asks for her attorney's fees in defending this appeal. Specifically, Ms. Goodpaster asserts that this appeal is frivolous. A frivolous appeal is one that has no reasonable chance of success. *Lovelace v. Owens–Illinois, Inc.,*

632 S.W.2d 553, 555 (Tenn.1982). As our Supreme Court has stated, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Davis v. Gulf Ins. Group,* 546 S.W.2d 583, 586 (Tenn.1977). In reviewing the record and considering this issue, we conclude that Ms. Goodpaster's request for attorney's fees on appeal should be denied.

For the foregoing reasons, we reverse the trial court's award of alimony *in futuro.* We remand the case for determination of reasonably necessary rehabilitative alimony and/or transitional alimony. The order of the trial court is otherwise affirmed. Costs of this appeal are assessed one-half to Appellant, Kenneth Lee Riggs, and his surety, and one-half to Appellee, Lisa Goodpaster Riggs.