# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 21, 2016 Session

## ELIZABETH MADELINE SHELTON BEWICK v. ROBERT KENT BEWICK

**Appeal from the Circuit Court for Warren County**
**No. 4540      Jon Kerry Blackwood, Senior Judge**

_____

**No. M2015-02009-COA-R3-CV – Filed February 13, 2017**

_____

This appeal stems from a divorce proceeding where the wife was awarded a divorce on the ground of adultery. The husband appeals and raises several issues related to the trial court's division of the marital estate. He also challenges the trial court's award of alimony *in solido* to the wife. Having reviewed the record transmitted to us on appeal, we affirm the trial court's division of the marital estate but vacate the award of alimony and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Timothy Pirtle, McMinnville, Tennessee, for the appellant, Robert Kent Bewick.

Michael D. Galligan and Benjamin R. Newman, McMinnville, Tennessee, for the appellee, Elizabeth Madeline Shelton Bewick.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Robert Kent Bewick ("Husband") and Elizabeth Madeline Shelton Bewick ("Wife") were married on July 8, 1978. Two children were born of the marriage, both of whom have now reached the age of majority. Husband is a dentist who has practiced in both Tennessee and Indiana. Although Wife previously worked in Husband's dental

office for much of the parties' marriage, she was employed as a receptionist at a law firm at the time of trial.

The parties were married while Husband was in dental school. During the early years of the marriage, while Husband was still pursuing his dental studies, the parties lived in Nashville. Wife worked year-round to help pay for the parties' living expenses, and Husband worked in the summers when he was not in school.

Following Husband's graduation from dental school, he had the opportunity to return to his home state of Indiana to practice dentistry with his father. He declined the opportunity at that time, however, and started a practice of his own near Wife's family in McMinnville, Tennessee. During the first several years of Husband's practice, Wife stayed at home with the children and took care of the parties' household. She also helped to recruit patients for Husband by telling people in the community about his dental practice. As the children got older, Wife began working with Husband at his practice, assisting him in a variety of ways. She also continued to perform the parties' household duties, including laundry, cooking, and cleaning.

In the early 1990s, Husband developed a serious problem with his cervical spine. Although this injury forced him to take a two-year sabbatical from work, he eventually returned to the practice of dentistry. To deal with reccurring pain, however, Husband started to self-medicate by using Demerol. In 1996, Wife started to suspect Husband was abusing the drug. Shortly thereafter, Husband moved to Atlanta, Georgia, in order to participate in a rehabilitative treatment program. He stayed in the program for several months. While he was away from McMinnville, Wife attended to the dental practice and arranged for other dentists to temporarily fill in.

Following Husband's return from Atlanta, he once again was presented with an opportunity to become a part of his father's dental practice in Indiana. This time, Husband did not reject the opportunity. In fact, Husband acquired a two-thirds interest in a limited liability company, Bewick Building Company LLC (the "Indiana LLC"), that owned the building where the Indiana practice was located.[1] Although Wife and the parties' children remained in McMinnville, Husband began to split his time between Indiana and Tennessee in 1999. Typically, he would work three days at his McMinnville dental practice and then fly to Indiana to work three days at his father's practice. Husband adhered to this work schedule for approximately five years until he began alternating weeks between Indiana and Tennessee. He maintained a regular work

---

[1] According to the Indiana LLC's Operating Agreement, which is dated July 27, 1999, Husband agreed to make an initial capital contribution of $170,000.00 for a 66 2/3% interest in the LLC, and his father agreed to make a capital contribution of $85,000.00 for a 33 1/3% interest.

- 2 -

presence in Indiana until 2010. There is no dispute that, prior to his return to Tennessee full-time, Husband engaged in an affair with one of the employees of his father's practice. Wife would eventually learn of the affair, and the parties separated. Husband's paramour would later move to McMinnville, where she resided with him and worked in his dental office.

Wife filed a complaint for divorce on August 16, 2013. In addition to asserting that Husband was guilty of inappropriate marital conduct, Wife alleged that irreconcilable differences had developed between the parties. Her prayer included a number of requests for relief, including the following: (1) that she be awarded the marital home, (2) that the parties' marital estate be divided equitably, and (3) that she be awarded spousal support and attorney's fees.

Husband filed an answer and counterclaim on January 21, 2014. Therein, Husband admitted that irreconcilable differences had arisen between the parties. Although he also admitted that he was guilty of an extra-marital relationship, Husband otherwise denied that he had committed inappropriate marital conduct. Moreover, in his counterclaim, he expressly averred that Wife was guilty of inappropriate marital conduct. Shortly after the filing of Husband's answer, following a hearing, the trial court ordered Husband to pay Wife temporary spousal support in the amount of $3,500.00 per month. Wife would later file an answer to Husband's counterclaim on August 4, 2015, wherein she denied that she had committed inappropriate marital conduct.

A trial was held over two days on August 5 and 6, 2015. On September 11, 2015, the trial court entered its findings of fact and conclusions of law in the case. In addition to granting Wife a divorce on the ground of adultery,[2] the trial court equitably divided the parties' marital estate and ordered Husband to pay Wife $6,000.00 per month for ten years as alimony *in solido*. Incident to its division of the parties' marital estate, the trial court awarded Wife the marital home, valued at over $430,000.00, plus the corresponding mortgage debt of $170,000.00. For his part, Husband was awarded his Tennessee dental practice, valued at $210,000.00, plus its "accompanying debt."[3] Husband was also awarded the interest he acquired in the Indiana LLC, valued at $500,000.00.[4] Following the entry of the trial court's September 11 order, Husband filed this timely appeal.[5]

---

[2] Although Wife did not specifically assert Husband's adultery as a ground for divorce in her complaint, the issue was clearly tried by the consent of the parties at trial. In fact, Husband specifically conceded that he was guilty of adultery and that Wife was entitled to a divorce on that ground.

[3] As best as we are able to discern, the value placed on the Tennessee dental practice accounted solely for the practice's assets.

[4] We note that the language utilized in the trial court's findings is somewhat imprecise in connection with

In his brief on appeal, Husband raises seven issues for our review. Slightly rephrased, these issues are as follows:

1. The evidence preponderates against the classification of Husband's interest in the Indiana LLC as marital property.

2. The evidence preponderates against the trial court's division of marital property.

3. The evidence preponderates against the trial court's apportionment of debt between the parties.

4. The trial court abused its discretion in ordering Husband to pay Wife $720,000.00 in alimony *in solido*.

5. The trial court erred in ordering Wife's attorney's fees to be paid from a marital asset.

6. The trial court erred in finding that Husband dissipated marital assets of $75,000.00.

7. The trial court erred in excluding from evidence an offer of proof by Husband that Wife inherited substantial assets from her father.

## STANDARD OF REVIEW

This case was tried by the trial court without a jury. Accordingly, we review the case de novo upon the record with a presumption of correctness regarding the trial court's

---

this particular award. For example, the trial court erroneously referred to the "value of the dental practice in Indiana" instead of the value of Husband's interest in the Indiana LLC, which owned the building where the Indiana dental practice was located. Moreover, incident to the actual division of the marital estate, the trial court purported to award the "Indiana dental buildings" to Husband rather than his interest in the Indiana LLC. Notwithstanding this imprecision in language, it is apparent to us that the trial court's intent was to award Husband his interest in the Indiana LLC, which it valued at $500,000.00.

[5] At oral argument in this case, we observed that the order appealed from did not appear to be final. Among other things, we noticed that there was a lack of compliance with Rule 58 of the Tennessee Rules of Civil Procedure. In accordance with an order entered by this Court on September 22, 2016, a supplemental record was subsequently filed in this Court that established the existence of a final judgment. Therefore, despite our initial concerns, we may properly exercise jurisdiction over this appeal.

findings of fact. *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007). We will affirm the trial court's findings unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). In order for the evidence to preponderate against a particular finding of fact, it must support another finding of fact with greater convincing effect. *Ingram v. Wasson*, 379 S.W.3d 227, 237 (Tenn. Ct. App. 2011) (citation omitted). When the resolution of the issues in a case depends on the truthfulness of witnesses, the trial judge is in a far better position than this Court to decide those issues. *Riggs*, 250 S.W.3d at 456 (citations omitted). As such, the credibility accorded to a witness by the trial court will be given great weight on appeal. *Id.* (citations omitted). Unlike our review of the trial court's factual findings, we review conclusions of law with no presumption of correctness. *Hyneman v. Hyneman*, 152 S.W.3d 549, 553 (Tenn. Ct. App. 2003) (citation omitted).

## DISCUSSION

*Offer of proof related to Wife's alleged inheritance*

We begin our discussion by addressing Husband's concern that the trial court erred in excluding from evidence an offer of proof concerning certain assets that Wife inherited. Having reviewed the record transmitted to us on appeal, we conclude that we are unable to effectively review this issue. Towards the conclusion of the trial court proceedings, the following exchange occurred between Husband's counsel and the trial judge:

> [Husband's counsel]: Your Honor, we'd make one final -- this will either be an offer of proof or an exhibit, depending on what the Court finds with regard to [the] merit of [Wife's counsel's] motion in limine regarding the Shelton -- the Joe Howell Shelton testamentary trust. If the Court reviews that motion and decides not to consider it, then it will be an offer of proof, otherwise --
>
> The Court: It will either be an exhibit or be an offer of proof.
>
> [Husband's counsel]: Very well. And with that, Your Honor, the defense rests.

We are unable to discern the specific character of the evidence that Husband wished the trial court to consider. No exhibit was actually introduced, nor was any offer of proof actually made. Moreover, the referenced motion in limine, which apparently concerned the proposed evidence, is not contained in the record.

Although it is not apparent from the transcript that Husband actually made an offer of proof concerning Wife's alleged inheritance, the trial court appeared to have specifically rejected Husband's suggestion that Wife's interest in a trust should be considered incident to the divorce. In its findings of fact and conclusions of law, the trial court specifically stated as follows: "The Court further finds that the wife's interest in a trust is not her property, in that she has no possessory interest in said property." We assume that this finding was made in connection with the trial court's review of the motion in limine referenced by Husband's counsel at trial.

Although Husband's failure to actually make an offer of proof concerning Wife's alleged inheritance is not necessarily fatal on its own, *see Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 286 (Tenn. Ct. App. 2012) (noting that an offer of proof is not necessary when the substance of the evidence and its reason for exclusion are apparent from the context), the record transmitted to us on appeal contains no details of the alleged property interest that Husband wished for the trial court to consider incident to the divorce. Again, the motion in limine that apparently dealt with Wife's supposed property interest is absent.

Based on the state of the record before us, we cannot ascertain whether Wife possessed some type of property interest in a trust that should have been considered. The proposed evidence is entirely missing from the record. Interestingly, Husband does not dispute this fact, nor does he disagree that the absence of this evidence inhibits our ability to conduct meaningful appellate review. In his brief, for instance, he specifically states as follows: "The appellate tribunal cannot evaluate this source of income to the wife or review the propriety of the trial court conclusion that the testamentary trust does not constitute a present interest without the offer of proof being part[] of the record on appeal."

"It is the appellant's duty 'to prepare [a] record which conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal.'" *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 902 (Tenn. Ct. App. 2009) (quoting *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) (citing Tenn. R. App. P. 24)). Husband had a duty to make sure that the record on appeal would enable appellate review, and with respect to this issue, he has failed to do so. The issue is, therefore, waived.

### Division of the Marital Estate

On appeal, Wife takes no issue with the trial court's division of the marital estate. Husband, however, raises a number of concerns in connection with the trial court's

division of marital property and apportionment of debts. For the reasons that follow, we affirm the trial court's division of the marital estate.

When dividing a marital estate in a divorce proceeding, the trial court's goal and duty is to divide the marital property equitably. *Owens v. Owens*, 241 S.W.3d 478, 489-90 (Tenn. Ct. App. 2007) (citations omitted). In seeking to achieve an equitable result, the trial court need not adopt a mechanical approach. *Id.* at 490 (citations omitted). Instead, it should carefully weigh the relevant factors in Tennessee Code Annotated section 36-4-121(c) in light of the parties' evidence. *Id.* (citations omitted). Although the fairness of the trial court "is inevitably reflected in its results," "[a] division of marital property is not rendered inequitable simply because it is not precisely equal[.]" *Id.* (citations omitted).

The trial court has wide latitude in fashioning an equitable division of marital assets, *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) (citation omitted), and as a reviewing court, we give great weight to the trial's decision. *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997) (citations omitted). Our role is simply to determine "whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable." *Owens*, 241 S.W.3d at 490 (citations omitted).

It is well-settled that "[t]rial courts have the authority to apportion marital debts in the same way that they divide marital assets." *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995) (citation omitted). In fact, a trial court's division of a martial estate is not complete until it has allocated both the marital property and the marital debt. *Owens*, 241 S.W.3d at 490 (citations omitted). Whether the trial court's action is equitable therefore requires us to consider the marital debts at issue in addition to the established marital assets.

Under Rule 7 of the Rules of the Court of Appeals of Tennessee, "where a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property." *Akard v. Akard*, No. E2013-00818-COA-R3-CV, 2014 WL 6640294, at \*4 (Tenn. Ct. App. Nov. 25, 2014). Pursuant to Rule 7, "[i]f counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief . . . a similar table containing counsel's version of the facts." Tenn. Ct. App. R. 7(c). Here, Husband and Wife both prepared Rule 7 tables in connection with the submission of their appellate briefs. Regrettably, their tables have been of little utility in assisting our review. The tables not only misstate certain numbers included in the trial court's findings of fact and

conclusions of law, but they also incorrectly assume that the trial court dealt with supposed debts that are wholly unaddressed in the trial court's order. Consequently, the calculations that accompany the parties' Rule 7 tables give an inaccurate account of the marital estate's overall division. By way of example, the trial court's order states that the parties owned a business account with a balance of $15,000.00. This dental practice account was ultimately divided "equally between the parties." Although the parties' briefs accurately reflect that a bank account was split between them, their Rule 7 tables suggest that the trial court split an account containing a balance slightly over $12,000.00, instead of the stated $15,000.00 balance listed in the trial court's order. As a general matter, however, subject to the specific exceptions that we will detail herein, neither party actually challenges the valuations of property and/or debt contained within the trial court's order. The Rule 7 tables simply present an inaccurate account of certain aspects of the trial court's property division. To the extent that certain values determined by the trial court have not been substantively challenged by the parties, we will assume them to be correct. Indeed, our review is limited to those issues that have properly been raised. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). If an error has not specifically been asserted with respect to an issue, we will not inquire into the matter.

Moreover, as we have noted, the prepared Rule 7 tables do not simply misstate certain numbers that were actually contained within the trial court's findings. The Rule 7 tables also inaccurately reflect that certain debts, which were not mentioned in the trial court's order, were allocated to Husband.[6] We note that because these supposed debts are not discussed in the trial court's order, they are not included in the trial court's calculation of total marital debt. As a natural consequence, they are not accounted for in the trial court's calculation of the net marital estate. Just as neither party has challenged certain valuations of assets and debts that are contained within the trial court's order, neither party has specifically raised an issue stating that the trial court's identification or calculation of debts, whether marital or separate, was in error. As such, we presume that the trial court's identification and classification of the parties' debts is complete and not in error. Again, we decline to inquire into an issue upon which no assertion of error has

---

[6] Moreover, the Rule 7 tables fail to account for all of the debts mentioned in the trial court's order that were specifically identified as marital. Notably, the Rule 7 tables do not list that the $600.00 debt owed on the parties' Lincoln automobile was assigned to Wife. Interestingly, although Wife's Rule 7 table is deficient in this respect, the content of her brief acknowledges that she was "awarded her automobile, *along with its debt*." (emphasis added). The Rule 7 tables do suggest that a debt in the amount of $1,100.00 to "Lincoln Finance" was assigned to Husband, but this is not reflected in the trial court's order. The trial court's order does not deal with this purported separate $1,100.00 debt, and the parties do not specifically assert that the trial court's failure to do so was in error. Assuming that this debt is the same marital debt that was addressed in the trial court's order, we note that the parties inaccurately state the balance of the debt as found by the trial court and to whom the debt was assigned.

- 8 -

been made. To the extent that the trial court's depiction of the components of the marital estate has been unchallenged, we will assume that it is correct.[7]

Based on our review of the trial court's findings of fact and conclusions of law, we can discern that the trial court's division of marital property and allocation of marital debt was as follows:

### Marital Property[8]

| Wife | | Husband | |
|---|---|---|---|
| Marital Residence | $430,956.14 | Ford Fusion | $27,000.00 |
| Lincoln car | 8,500.00 | Dental Practice | 210,000.00 |
| Household furnishings | 19,030.00 | Indiana LLC interest | 500,000.00 |
| Other automobile | 8,500.00 | Household furnishings | 10,000.00 |
| ½ Dental practice account | 7,500.00 | ½ Dental practice account | 7,500.00 |
| Homeland account | 37,800.00 | | |
| Golf cart | (no value specified) | | |
| | -------------------- | | ---------------- |
| | $512,286.14 | | $754,500.00 |

---

[7] It is imperative that counsel be diligent and accurate in the preparation of Rule 7 tables. Such diligence will not only help this Court achieve speedier resolution of appeals, but it may also be of help to the parties in understanding the actions of the trial court. In this case, the parties seem to have misapprehended certain aspects of what is actually included in the trial court's order. Had the Rule 7 tables been more carefully prepared by counsel, they would have perhaps been more aware of the substance of the trial court's order and thus better prepared to take issue with any potential classification or valuation errors that they believed were at hand.

[8] The trial court's order states that the value of the marital assets is "$!,255,800.00." No doubt, the first digit of the represented number is the product of a typographical area. It is clear that the intended calculation was $1,255,800.00. It appears, however, that even this intended calculation was itself the product of error, albeit a mathematical one. Based on our calculations, the value of the martial assets, as measured by the numbers contained within the trial court's order, is $1,266,786.14. We also note that a computational and/or typographical error appears to have contributed to the trial court's expression of the martial estate's overall value. The trial court listed that amount as "$893,111.75." However, by subtracting the determined marital debts of $362,682.55 from the trial court's intended calculation of marital assets, which was $1,255,800.00, a resulting value of $893,117.45 is left. In any event, using the correct calculation of $1,266,786.14 for the value of marital assets (which again, we pull directly from the trial court's own numbers) and subtracting the determined marital debts of $362,682.55, the correct expression of the marital estate's value is $904,103.59.

**Marital Debt**

| Wife | | Husband | |
|---|---|---|---|
| Debt on Marital Home | $170,000.00 | Debt on Ford Fusion | $20,000.00 |
| Debt on Lincoln car | 600.00 | Debt secured by | |
| | | dental equipment | 160,000.00 |
| | | Security Federal | 12,082.55 |
| | ------------------ | | ---------------- |
| | $170,600.00 | | $192,082.55 |
| Net Award | $341,686.14[9] | | $562,417.45 |
| | (≈ 37.8%) | | (≈ 62.2%) |

In his brief on appeal, Husband raises a number of arguments that are relevant to considering whether the trial court's division of the marital estate was equitable. We address all of his arguments here, regardless of whether they are raised as free-standing issues or are presented as sub-issues within the context of a larger argument. As far as we can discern, Husband's brief raises the following concerns that are relevant to the trial court's classification and division of the marital estate: (1) the trial court erred in considering fault incident to the division of the estate, (2) the trial court erred in valuing the McMinnville dental practice, (3) the trial court erred in classifying Husband's interest in the Indiana LLC as marital property, and (4) the trial court erred in finding that Husband dissipated marital assets of $75,000.00.

We turn first to Husband's concern related to his interest in the Indiana LLC. At the outset, we note that Husband does not challenge the trial court's finding that his

_____

[9] For the sake of completeness, we note that the calculation of Wife's net award does not take into account the interest she had in the golf cart that she was awarded. The trial court did not place a value on the golf cart in its findings of fact and conclusions of law. With that said, it is clear that the golf cart's value is largely insignificant considering the overall value of the marital estate. Although Husband did not address the golf cart in his Rule 7 table, Wife noted that the golf cart had been valued at $1,500.00. Our review of the transcript from the trial reveals that there is some evidence to support a valuation in that amount. At trial, Donald Hillis, a "realtor-auctioneer," was questioned about a prepared household inventory and whether it reflected the fair market value for the individual items listed therein. Mr. Hillis agreed that the numbers contained in the inventory were indicative of fair market value. Within the inventory, the golf cart had a listed value of $1,500.00. Although the "Statement of Facts" section of Husband's brief mentions in passing that the parties own a golf cart "costing" $5,000.00, there is no reference to the *value* of the golf cart, nor does Husband include any citation to the record to support his assertion that the golf cart *cost* $5,000.00.

interest in the Indiana LLC is $500,000.00. He does, however, assert that the trial court erred in classifying his interest in the Indiana LLC as marital property as opposed to his separate property. This distinction is certainly significant in divorce proceedings such as the present one because property cannot be included in the marital estate unless it meets the definition of "marital property" contained within the Tennessee Code. *Owens*, 241 S.W.3d at 485. Likewise, if an asset is rightfully defined as "separate property" under the Tennessee Code, it should not be included in the marital estate. *Id.*

Under the Tennessee Code, "marital property" is defined in part as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(1)(A). By contrast, "separate property" is defined as follows:

(A)     All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, compiled in 26 U.S.C., as amended;

(B)     Property acquired in exchange for property acquired before the marriage;

(C)     Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D)     Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E)     Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F)     Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2). In this case, Husband contends that his interest in the Indiana LLC should have been properly classified as a gift under Tennessee Code Annotated section 36-4-121(b)(2)(D).

"Questions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate,

are inherently factual." *Owens*, 241 S.W.3d at 485 (citations omitted). As such, we employ the familiar standard of review outlined in Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). "As a general rule, assets acquired by either spouse during the marriage are presumed to be marital property." *Owens*, 241 S.W.3d at 485 (citations omitted). Moreover, when a spouse seeks to assert that an asset acquired during the marriage is separate property, he or she bears the burden of proving that fact by a preponderance of the evidence. *Id.* at 485-86 (citations omitted). Here, there is no question that Husband acquired his interest in the Indiana LLC during the course of the marriage. Accordingly, it was his burden in the trial court to prove that his fractional property interest in the Indiana company was separate property under one of the definitions contained in Tennessee Code Annotated section 36-4-121(b)(2).

Having reviewed the record transmitted to us on appeal, we conclude that the evidence does not preponderate against the trial court's classification of Husband's interest in the Indiana LLC as marital property. Although Husband argues that his acquired interest in the Indiana LLC was nothing more than a gift from his father, the record supports the trial court's determination that Husband's interest in the Indiana LLC was "earned . . . during the marriage." Notably, Husband's testimony provides significant support for this finding, as it reflects that he would not have acquired an interest in the Indiana LLC had he not been willing to work for his father's dental practice:

> [Wife's counsel]: All right. Let's talk about . . . why you went [t]o Indiana.
>
> [Husband]: Uh-huh.
>
> [Wife's counsel]: Your dad wanted you to come to Indiana, right?
>
> [Husband]: Sure.
>
> [Wife's counsel]: He wanted his other sons there in Indiana, right?
>
> [Husband]: Yes.
>
> [Wife's counsel]: And as you told me in the deposition, he induced you to come by offering you the building; did he not?
>
> [Husband]: Yes.

[Wife's counsel]:  And that's what you said, right?

[Husband]:  Sure.

[Wife's counsel]:  **He would not have had that building in your name at all if you hadn't gone to Indiana, right?**

[Husband]:  **Correct.**

(emphasis added).  According to Husband, although he sometimes earned more in his McMinnville practice than he did at the Indiana practice, and vice versa, his earnings were relatively equal between the two practices.  As is evident from the following testimony, there was no real economic benefit to working in Indiana apart from his acquisition of an interest in the Indiana LLC:

[Wife's counsel]:  So you went to Indiana, back and forth, induced by your father with this benefit of having this building, right?

[Husband]:  Yes.

[Wife's counsel]:  And of course, that was a hardship on you, right?

[Husband]:  Yes.

[Wife's counsel]:  And it was a hardship on your family, was it not?

[Husband]:  Yes.

[Wife's counsel]:  **The consideration for that being that there would be . . . more economic benefit because of the ownership of the building, right?**

[Husband]:  **Yes.**

[Wife's counsel]:  Because, as you've said, there was no economic benefit to your going, other than the building.

[Husband]:  Correct.

(emphasis added).

In light of Husband's testimony, we cannot conclude that the trial court erred in failing to find that Husband's interest in the Indiana LLC was acquired by way of gift. Husband's own testimony indicates that he would not have received an interest in the company absent his agreement to work in Indiana. Moreover, although Husband testified at trial that he did not pay anything for the interest he acquired in the Indiana LLC, we note that the company's Operating Agreement clearly states otherwise. As we pointed out in footnote one to this Opinion, Husband agreed to make an initial capital contribution of $170,000.00 for his two-thirds interest. His father agreed to make an initial capital contribution of $85,000.00 for a one-third interest. We reproduce below the relevant portion of the Operating Agreement that evidences this fact:

**ARTICLE VIII**
**CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS**

**Paragraph 8.01 Members' Initial Capital Contributions.** The Members agree to make the following Initial Capital Contributions:

| | |
|---|---|
| Charles R. Bewick | $85,000.00 |
| Robert Kent Bewick | $170,000.00 |

Contrary to Husband's arguments on appeal, the evidence does not preponderate in favor of a finding that his two-thirds interest was simply given to him by his father. Further, as noted by Wife in her appellate brief, there is evidence that Husband did not treat his interest in the Indiana LLC as his own separate property. At trial, certain loan documents relating to an application for credit by Husband and Wife were entered into evidence. Within the application, the parties completed a list of their assets and debts. Among the listed assets was the "Bewick Dental Ind. Building," with a represented value of $500,000.00. (Ex. 22) Although the loan application provided a space where the parties could have specified that this asset was owned only by Husband, no such distinction was made. In light of the foregoing, we find no error in the trial court's classification of the interest in the Indiana LLC as marital property.

With respect to Husband's argument that the trial court considered fault incident to its division of the marital estate, we concede that the trial court's order contains some language that arguably suggests that fault was considered. The following sentence appears immediately prior to the trial court's division of property and allocation of debts: "Finally the discovery of adultery was painful and embarrassing to the wife and the husband's conduct once the adultery was discovered was shameful." It is unclear what is contemplated by the referenced "shameful" conduct. The order is devoid of further explanation or detail. Although the sentence may seem to indicate that the trial court was considering fault incident to the division of the marital estate, it is also possible that mentioned "shameful" conduct was intended to refer to Husband's dissipation of marital

- 14 -

funds. Indeed, Husband's dissipation of funds is mentioned in the trial court's order prior to the "shameful" finding. Consideration of a spouse's dissipation of funds is not impermissible when dividing the marital estate. *See* Tenn. Code Ann. § 36-4-121(c)(5). However, we would not dispute that if the trial court considered Husband's marital fault generally as opposed to his dissipation of funds, it erred. It has been long established that "[o]ur divorce statutes require an equitable division of the marital estate *without regard to fault.*" *Watters v. Watters*, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997) (emphasis added) (citing Tenn. Code Ann. § 36-4-121(a)).

With that said, even if we were to affirmatively view the "shameful" language as evidencing a consideration of fault incident to the property division, we cannot conclude that it tainted the equities of the ultimate award. Indeed, to the extent that fault was considered, it does not appear to have been a significant factor, and we find that any consideration of fault with respect to this issue was harmless error. As detailed by the chart we prepared above, Husband received roughly 62% of the net marital estate. When considering the factors in Tennessee Code Annotated section 36-4-121(c), we cannot agree that this division was inequitable as it relates to him.

We next address Husband's concern that the trial court erred in valuing the McMinnville dental practice at $210,000.00. "Decisions regarding the value of marital property are questions of fact." *Owens*, 241 S.W.3d at 486 (citation omitted). On appeal, they are entitled to great weight, and we will not second-guess the trial court's valuations unless they are not supported by a preponderance of the evidence. *Id.* (citations omitted). "In the face of conflicting opinions regarding the value of a marital asset, the trial court may place a value on the asset that is within the range of the values presented by the competent evidence." *Id.* at 489 (citations omitted). Because valuation evidence is inherently subjective, a trial court's valuation decisions do not need to track precisely the valuation opinions that have been offered into evidence. *Id.* (citation omitted). "A trial judge, as the fact finder, is not required to check his or her common sense at the door when considering evidence." *Eberting v. Eberting*, No. E2010-02471-COA-R3-CV, 2012 WL 605512, at *20 (Tenn. Ct. App. Feb. 27, 2012).

Here, the trial court valued the assets[10] of the dental practice amidst conflicting evidence. Wife offered the testimony of accountant Wayne Cantrell, who testified that the value of the practice was $265,489.00. In the course of explaining how he reached his ultimate valuation, Mr. Cantrell noted that the practice had a total of $131,000.00 in

---

[10] As we indicated in footnote three to this Opinion, it appears that the trial court's valuation of the dental practice ultimately accounted only for the practice's assets. This fact is apparent to us, in part, because the debts associated with the practice were considered separately incident to the trial court's division of the marital estate.

its accounts receivables, of which over $108,000.00 was less than ninety days old. He also noted that Husband's dental equipment was insured for $163,000.00. Although these, among other considerations, contributed to his final valuation, the trial court rejected Mr. Cantrell's ultimate assessment, noting that he had impermissibly considered goodwill. "[T]his Court has repeatedly held that professional goodwill in a sole proprietorship is an intangible asset that is not divisible as marital property upon divorce because it is personal to the proprietor." *Lunn v. Lunn*, No. E2014-00865-COA-R3-CV, 2015 WL 4187344, at *6 (Tenn. Ct. App. June 29, 2015) (citations omitted). For his part, Husband testified that not all of his outstanding accounts would be collectible. He stated that some of his patients' bills were paid by third-party reimbursers such as Blue Cross Blue Shield, who paid according to varying reimbursement rates. Moreover, Husband's counsel also offered into evidence an appraisal that valued the dental equipment at $15,970.00.

Having reviewed the evidence offered at trial on this issue, we conclude that it does not preponderate against the trial court's valuation of the dental practice's assets. Moreover, turning to Husband's brief, we note that he does not dispute that the parameters of proof at trial supported a valuation of the accounts receivable of at least $104,800.00. He simply submits that the total range of proof on the dental practice's assets is bounded by this amount plus the $15,970.00 value for which the dental equipment had been appraised. Thus, he argues that the assets of the dental practice should not have been valued higher than $120,770.00. Assuming *arguendo* that we found favor in this argument, we cannot conclude that it would render the distribution of the marital estate an inequitable one. Accepting Husband's argument, the trial court overvalued the assets of the dental practice by $89,230.00. According to our calculations, if the value of Husband's awarded assets was decreased by this amount and a corresponding reduction was also made to the size of the overall marital estate, Husband's net award would decrease to approximately 58%. Wife's share of the net estate would increase slightly to approximately 42%. We cannot conclude that this distribution would be inequitable with respect to Husband. Thus, even if we found that the value of the dental practice's assets was limited in the manner outlined in Husband's brief, the overall distribution would still remain fair and equitable as it related to Husband when considered in light of the factors codified at Tennessee Code Annotated section 36-4-121(c).

We next address Husband's argument that the trial court erred in finding that he dissipated marital assets in the amount of $75,000.00. As previously noted, a party's dissipation of property may be considered when a trial court fashions an equitable division of the marital estate. *Altman v. Altman*, 181 S.W.3d 676, 681 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 36-4-121(c)(5)). Although no statutory definition of "dissipation" exists, the concept is predicated on waste. *Id.* (citation omitted).

"Dissipation of marital property occurs when one spouse uses marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage is breaking down." *Id.* at 681-82 (citations omitted).

At trial, Wife's counsel introduced a summary of various expenditures that Husband had allegedly made on behalf of his paramour. According to a notation that appeared beneath the summary ledger, these amounts totaled over $80,000.00. At trial, Husband agreed that he spent $58,614.91 on his paramour, but he also testified that some of the itemized expenditures listed on the introduced exhibit related to salary that he paid his paramour for working at his dental office. According to Husband, he did not pay his paramour more than what was dictated by the market, and of the $58,614.91 that he agreed that he had spent on his paramour, he testified that approximately $30,000.00 of that amount accounted for the paramour's paychecks. Husband makes specific mention of this in his appellate brief in support of his assertion that the trial court's dissipation finding was in error.

Although the trial court did find that Husband dissipated assets in the amount of $75,000.00, we note that its findings do not reveal how, or to what extent, Husband's dissipation was charged or assessed against him. In any event, assuming *arguendo* that the trial court's dissipation finding is in error, this does not necessarily mean that the trial court's property division should be reversed. "In the final analysis, the appropriateness of the trial court's division depends on its results." *Id.* at 683 (citations omitted). As we have already noted, regardless of whether Husband's dental practice's assets are valued at $210,00.00 as found by the trial court or at $120,770.00 as argued by Husband, we cannot conclude that Husband's net award was inequitable in light of the statutory factors. Accordingly, even assuming that Husband did not dissipate assets to the extent found by the trial court, we find no basis to disturb the trial court's division of the marital estate.[11]

---

[11] Although Husband's brief also appears to challenge the trial court's decision to award Wife the Homeland bank account, he interprets this award as an award of attorney's fees as alimony *in solido*. Although the trial court did mention attorney's fees in connection with the award of the Homeland account, we do not interpret the award as an award of alimony *in solido*. Husband was not ordered to pay Wife's attorney's fees, nor was he awarded the Homeland account incident to the property division but nonetheless required to pay the balance over to Wife in order to satisfy her attorney's fees. An award of attorney's fees as alimony *in solido* is generally appropriate "'where the final decree of divorce does not provide the . . . spouse with a source of funds, such as from property division or alimony in solido, with which to pay his or her attorney.'" *Watson v. Watson*, 309 S.W.3d 483, 501 (Tenn. Ct. App. 2009) (quoting *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002) (citing *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992))). Here, Wife received the Homeland bank account directly incident to the trial court's division of the marital property. Thus, the award is properly viewed as an award of liquid assets that Wife received as part of the trial court's equitable division. We find no inequity in the trial court's decision to award the Homeland account to Wife, or in its overall property division as it may

*Alimony*

Having addressed the issues concerning the division of the marital estate, we now turn our attention to the trial court's alimony award. *See Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998) (noting that consideration of spousal support should follow decisions related to how the parties' property is divided). In its order of divorce, the trial court ordered Husband to pay alimony according to the following terms: "[He] shall pay the sum of $6,000.00 per month as alimony in solido[.] The term shall be for ten years." Husband takes issue with this award on appeal and argues that the trial court should have considered spousal support that could meet the needs of Wife other than alimony *in solido*.

"Current Tennessee law recognizes several distinct types of spousal support, including (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011) (citing Tenn. Code Ann. § 36-5-121(d)(1)). There is a "legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible." *Id.* at 109 (citations omitted). Given this legislative preference, "there is a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro." *Id.*

The appropriateness of an award of alimony is dependent on the facts and circumstances of each case. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). On appeal, we review a trial court's decision regarding alimony under an abuse of discretion standard. *Id.* We review its decision, in part, to determine whether it is supported by the facts in evidence and to see whether the trial court identified and applied the applicable legal principles. *Id.* (citation omitted).

Tennessee Code Annotated section 36-5-121(i) instructs trial courts to consider the following factors when determining whether alimony is appropriate and in determining the nature, amount, length of term, and manner of payment:

> (1)    The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2)    The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the

concern Husband.

- 18 -

necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)      The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)   The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)   The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)   Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).  It is well-settled that the disadvantaged spouse's need and the obligor spouse's ability to pay are most important among these factors.  *Riggs*, 250 S.W.3d at 457 (citations omitted).  With that said, "the disadvantaged spouse's need is the threshold consideration."  *Id.* (citations omitted).  Although the trial court did not cite to Tennessee Code Annotated section 36-5-121(i) in its order, its findings discuss many of the relevant factors from the statute.  As Husband has noted in his brief, however, the trial court's findings appear to be devoid of a consideration of Wife's need, namely her need to receive an alimony *in solido* award of $720,000.00 to be paid

monthly over a ten-year period. In pertinent part, the trial court's findings state as follows with regard to its award of alimony:

> The Court has considered that husband's earning capacity is greater than wife's. [H]e will still have a thriving dental practice while her employment will still be limited to a legal secretary. The husband can still remain in his profession; the wife cannot. The marriage was of long duration and both parties are approaching 60. The Court has already addressed the physical and mental health of the parties. Until the adulterous affair, the parties maintained a comfortable living condition although it might have been beyond their means. Both parties contributed equally to the acquisition of the estate. The fault in the marriage is entirely with the husband. The Court has reviewed the financial records of the husband including his returns. **The most important factor to be considered is the party's ability to pay support**[.] . . . The Court finds that [Husband's] income ranges from $120,000.00 to $150,000.00 which means he has the ability to pay.

(emphasis added). Although Husband's ability to pay is an extremely important factor for the trial court to examine, it is not the most important consideration in determining whether the trial court's alimony award is appropriate. The trial court's statement to the contrary is in error. As we have noted, Wife's need should be the threshold consideration in determining whether alimony should be awarded and in shaping the type and amount of the award. *See id.* Here, however, the trial court's findings do not appear to give any consideration to this factor, especially as would inform its decision to award alimony *in solido* as opposed to other forms of support and to give Wife an effective award of $720,000.00. Given the absence of proper findings with regard to Wife's needs, we find it appropriate to vacate the alimony award and remand the issue to the trial court for reconsideration in light of the factors presented in Tennessee Code Annotated section 36-5-121(i), *including* Wife's needs. In revisiting the issue of alimony on remand, the trial court should make findings of fact and conclusions of law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure. Pending the trial court's reconsideration of the alimony issue on remand, we hereby reinstate the temporary spousal support award reflected in the trial court's order filed on April 7, 2014, which required Husband to pay Wife temporary support of $3,500.00 per month.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's division of the marital estate, vacate its award of alimony *in solido*, and remand the case for a reconsideration of

alimony in light of the factors in Tennessee Code Annotated section 36-5-121(i). Pending the trial court's reconsideration of the alimony issue on remand, the trial court's prior order of temporary support of $3,500.00 per month shall be reinstated. The costs of this appeal are assessed one-half against the Appellee, Elizabeth Madeline Shelton Bewick, and one-half against the Appellant, Robert Kent Bewick, and his surety, for all of which execution may issue if necessary. We hereby remand the case to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____

ARNOLD B. GOLDIN, JUDGE