IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2010 Session

**KATHY ELAINE SCHIFFNER v. CURTIS JAMES SCHIFFNER**

**Appeal from the Chancery Court for Franklin County**
**No. 18689      Jeffrey F. Stewart, Chancellor**

_____

**No. M2010-00121-COA-R3-CV - Filed March 28, 2011**

_____

In a divorce action, Husband appeals trial court's award of alimony to Wife, asserting that the amount was excessive and the duration was not supported by the evidence. Finding the trial court did not abuse its discretion in the nature, duration and amount of alimony awarded, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Gerald L. Ewell, Jr., Tullahoma, Tennessee, for the appellant, Curtis James Schiffner.

Cynthia A. Cheatham, Manchester, Tennessee, for the appellee, Kathy Elaine Schiffner.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

In this divorce action, Curtis James Schiffner ("Husband") appeals the amount and duration of trial court's award of alimony *in futuro* to Kathy Elaine Schiffner ("Wife").

On April 30, 2008, Wife filed a Complaint for Divorce in the Franklin County Chancery Court, alleging inappropriate marital conduct and irreconcilable differences. On May 16, Wife filed a motion for *pendente lite* spousal and child support; the disposition of the motion is not evident from the record.[1] In an order entered March 19, 2009, the court

_____

[1] At a hearing held on October 30, 2009 to announce its ruling following the trial of the case, the
(continued...)

declared the parties divorced based on their stipulation pursuant to Tenn. Code Ann. § 36-4-129; the issues of property division, alimony, parenting plan, and child support were reserved for trial, which was held on July 20. At a hearing on October 30, 2009, the trial court announced its ruling, in which the court divided the marital assets and disposed of the child support and parenting plan issues; the ruling was memorialized in an order entered December 18. The rulings on those issues are not challenged on appeal.

The court also determined that an award of alimony to Wife was appropriate and awarded alimony *in futuro* to be paid in the following amounts and duration: $1,800 per month for the first two years; $1,500 per month for years three through five; $1,250 per month for years six through ten; and $500 for years 11 through 15. Husband appeals the amount and duration of the alimony awarded and asserts that the trial court erred in applying the factors set forth in Tenn. Code Ann. § 36-5-121. Husband does not contend that an award of alimony was not supported by the evidence or appropriate in this case. Rather, he asserts that no reason was given by the court to support raising the alimony award from $1,500 to $1,800[2] for the first two years or to support alimony in the amount awarded to Wife in years three through ten; he argues that an award of $500 per month for six years is consistent with Wife's expenses, the parties' standard of living, and legislative intent.

ANALYSIS

Tennessee Code Annotated § 36-5-121(i) lists a number of nonexclusive factors to be considered when a court is determining whether to make an award of alimony, including the relative earning capacity, obligations, needs, and financial resources of each party; the relative education and training of each party; the ability and opportunity and necessity of each party to secure such education and training in order to improve such party's earning capacity to a reasonable level; and the assets of each party, whether they be separate assets or marital property awarded in the divorce. The court should consider all the relevant factors under the circumstances, but the two most important factors are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) (citing *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn.

---

[1](...continued)
court stated that Husband had been paying $1,500.00 per month as alimony "on a temporary basis." This payment was affirmed by the testimony of Wife. Although the record does not show a disposition of the request for *pendente lite* child support, Wife's proposed parenting plan, filed with the divorce complaint, designated Wife as primary residential parent and calculated Husband's monthly child support obligation at $1,158.00.

[2] Presumably Husband is referring to the $1,500.00 per month he was paying as *pendite lite* alimony.

2002)); *see also Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001); *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007). When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Riggs*, 250 S.W.3d at 457 (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)).

This Court gives a trial court great latitude in making an alimony decision and is generally disinclined to interfere unless the facts clearly require that we do so. *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984). When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 727; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220, (Tenn. 2006); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004).

In determining to award alimony to Wife, the trial court stated in pertinent part:

These parties were married for about 13 years. They had a relationship that was ongoing prior to that they have talked about. They have one child of this marriage. She will be 12 in December as I previously pointed out. During that period of time, [Wife] has earned no money, no income. She - - they did run a dry cleaner business that [Husband] said they basically operated on borrowed money. It didn't make any money. When they sold it, it didn't show any profit, and that was all before the birth of their daughter Megan. [Husband] has shown a capacity to earn a significant income. . . . [Husband] is 58 years of age. He has worked in this industry, I believe, since the early 1970s, and as I said, he had been here running this operation either for himself or someone else since 1983, and I think his last earning statement showed that he made $125,000 in income. As I said, [Wife] has earned none. [Wife] is 48 years of age. She has been at home, as I said, the last 11-plus years. Her jobs and her background are basically factory work jobs. She did some waitressing. I think the testimony was she worked at a shirt factory and pajama factory. She has a 10th grade education, and I don't believe she had any special training or any specific skills. None of her work had been office-type work or dealing with equipment or computers, and the Court takes that into consideration, and there is no finding that she has a GED. . . .
* * *

-3-

In looking at what type of alimony would be appropriate, I do think this is a case where I would have to find that [Wife] is a disadvantaged spouse under the facts of this case. The question is, what type of alimony would be appropriate? In looking at the different types of alimony, I don't think transitional would apply under the facts of this case because it is really for a short period of time and is really just meant to cushion or adjust the economic consequences caused by the divorce. . . . There is just not a job for her to easily transition back into. As I said, she has been out of the workforce a long time, and even though both are generally in good health, [Husband] has been the main provider for this family. . . . I think then under the facts of this case, it would be appropriate to make an award that would be at least on a periodic basis, and I think the Court will award that because it doesn't appear to me that rehabilitation is feasible, and I have already said that transitional alimony didn't really seem to be the appropriate thing to do.

. . . I think that the ability to secure additional training for her is not substantial. She doesn't have a GED or a high school diploma. At age 48, it would just take a long time for her to get there. The marriage has been, as I said, for over 12 years, almost 13, plus they had a relationship prior to their marriage. Both are in relatively good health and seem to be in good mental condition as well. As I pointed out, [Wife] has been the custodian and caretaker of the minor child during the marriage, and that is one of the reasons she hasn't worked, and so I think then looking at the provision of the property that I am going to make later, I think this will be the appropriate thing to do is award some alimony on a periodic basis, plus I have to consider that it appears to me that [Husband] has the greater capacity to accumulate assets than she does.

We have reviewed the record, and the evidence does not preponderate against the factual findings of the court.

In light of the facts as found, we are unable to conclude that the trial court abused its discretion in making the alimony award. The court correctly determined that Wife was economically disadvantaged and did not err in its application of Tenn. Code Ann. § 36-5-121. The court found that transitional alimony was not appropriate because Wife did not have a job into which she could transition; that, because of her lack of skills and experience, rehabilitation was not feasible; that, because of its decision with respect to division of the parties' property, alimony *in solido* would not be awarded; and that an award of alimony *in futuro* was appropriate.

-4-

An award of alimony *in futuro* is appropriate "where there is relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors," including those enumerated in § 36-5-121(i). Tenn. Code Ann. § 36-5-121(d)(3). According to Tenn. Code Ann. § 36-5-121(f)(1):

> Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, . . . an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse . . . .

Tenn. Code Ann. § 36-5-121(f)(1).

The facts upon which the court relied in determining that alimony *in futuro* was appropriate also support the amount and duration of the award. Wife was 48 years old and, for the previous 11 years, had stayed at home to raise the parties' daughter and earned no money or income. Wife had a 10th grade education, no special training or specific skills, and her work experience was limited to the manufacturing industry and food service; the court noted that she did not have a GED and that she had no retirement benefits. To the contrary, the court found that Husband had the capacity to earn a significant income through his business; that he had a greater capacity to accumulate assets than Wife; and that his standard of living after the divorce would be much higher than that of Wife. The court properly noted that the award was modifiable.[3]

Husband contends that an award of alimony *in futuro* of $500.00 per month for six years is "consistent with Mrs. Schiffner [sic] expenses, the parties' standard of living and legislative intent" and that the award "is a disincentive to Mrs. Schiffner's contributing to her own self-sufficiency." We disagree.

The award is consistent with the legislative intent and purpose expressed in Tenn. Code Ann. § 36-5-121(c)(1), (2)[4] and the amount and duration is a proper exercise of the

---

[3] "An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

[4] Tenn. Code Ann. § 36-5-121(c)(1), (2) reads:

(continued...)

court's discretion. In addition to addressing Wife's clear need for financial assistance, the award acknowledges Wife's contribution to the marriage and the raising of the parties' daughter; likewise, the court recognized Husband's provision of financial strength and stability throughout the marriage and his success in business. As the court noted, Husband has the ability to earn an income of at least $125,000.00 per year, while Wife has a limited education and few skills that would provide employment and a standard of living reasonably comparable to that enjoyed during the marriage or which would be available to Husband after the divorce. The court's decision was supported by the evidence and complied with applicable statutes; the court did not abuse its discretion.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is AFFIRMED. Costs of this appeal are assessed against Curtis James Schiffner.

_____
RICHARD H. DINKINS, JUDGE

---

[4](...continued)

(c)(1) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

(2) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.