IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 30, 2018 Session

DANIEL JAMES FINSTAD V. JESSICA ANN CALFEE FINSTAD

Appeal from the Chancery Court for Anderson County
No. 15CH7494      M. Nichole Cantrell, Chancellor

———————————————

No. E2017-01554-COA-R3-CV

———————————————

In this action for divorce, alimony was the only remaining issue at trial. After the hearing, the trial court entered a final decree of divorce declaring that wife is an economically disadvantaged spouse pursuant to Tenn. Code Ann. § 36-5-121(f) and that husband is able to pay her alimony. The court held that there was no proof that wife was underemployed and no proof she could be rehabilitated; it therefore awarded wife alimony *in futuro*. We hold that the trial court abused its discretion in awarding wife alimony *in futuro*. We modify the trial court's judgment so as to provide wife transitional alimony. As modified, the judgment of the trial court is affirmed. We remand this case to the trial court with instructions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Modified in Part; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and JOHN W. MCCLARTY, J., joined.

Andrew Pate, Knoxville, Tennessee, for the appellant, Daniel James Finstad.

Kevin C. Angel, Clinton, Tennessee, for the appellee, Jessica Ann Calfee Finstad.

**OPINION**

**I.**

The parties were married on March 23, 2003. They have three children together. On February 23, 2015, wife filed for legal separation; included in that filing was an agreed permanent parenting plan and a marital dissolution agreement signed by both parties. The agreed permanent parenting plan was approved and signed by the trial court. On September 18, 2015, and, significantly, prior to the court entering an order on the legal separation, husband filed for divorce raising the issue of alimony.

-1-

Wife requested that the court award her alimony as follows – $905 per month for five years and $600 per month thereafter until husband retires or dies, or wife dies or remarries. She supported her claim for alimony *in futuro* by referring to the unexecuted marital dissolution agreement attached to her February 23, 2015 petition for legal separation. In relevant part, the agreement provides, in the language of the document, that husband would pay

> Three Hundred Dollars ($300.00) per month alimony during the Legal Separation; after the divorce the Defendant will pay Nine Hundred Five Dollars ($905.00) per month alimony for a 5 year period; and thereafter Defendant will pay Six Hundred ($600.00) per month until he retires.

Wife testified that husband is currently paying her the $300 in monthly spousal support.

At trial, wife and husband both testified regarding their monthly expenses. Wife testified that the affidavit she presented to the court accurately reflected what she "currently" has in the way of monthly expenses and income. She testified that her income is derived from the operation of an in-home daycare that she runs in the evenings, and that she also works at Bojangle's every other week. She testified that these positions produce $1,100 a month in income. Wife testified that, during her marriage, she had previously managed a United Parcel Service store. She testified that the UPS position allowed her to work full-time hours, even on the weeks when she had her children; she testified that they were "gracious enough to let me off to be able to pick [my children] up from school."

She testified that husband is paying her motor vehicle payment, her motor vehicle insurance, and that he is maintaining and paying her health insurance through his employment. He is also paying her $1,001 in child support each month. When testifying regarding her current work schedule, wife testified that at Bojangle's she "could work more hours, and I plan to when the school year starts back up. Bojangle's will put me on the schedule while the kids are in school but it will not interfere with my ability to pick them up."

Wife testified that she had been living at her current residence for two years, and that she shared expenses with a roommate for about nine months. She testified that the house she lives in is owned by her parents and that she is living rent-free. She testified that the $950 per month in rent she listed as an expense on her affidavit was an amount that she alleges her parents aspire to obtain – not a number she ever actually paid. Similarly, she listed expenses for water and electricity ($130), and gas ($50), but these expenses were also being paid by her parents. She listed her total monthly expenses as $3,122 – this sum includes the $950 and $180 she testified that she did not actually have

to pay each month. She listed her net monthly income as $900; her affidavit did not reflect the $1001 in child support she received each month, the $300 she receives each month in spousal support, the $516.32 in car payment and car insurance that were being paid for her, did not reflect any assistance from her parents that she testified she receives, and did not reflect that her health insurance was being paid for her.

Husband's affidavit of monthly income and expenses showed a net monthly income of $5,351.78 and monthly expenses of $6,311. Reflected in husband's affidavit were the $1,001 in child support and the $300 in spousal support he was paying to wife each month; the car payment, car insurance, and health insurance he was paying for the wife's benefit were also reflected in his affidavit.

Husband testified that he had previously been inadvertently paying wife $1,300 a month in child support, and that he overpaid about $4,000; he did not request reimbursement for the overpayment. As noted above, husband testified that he was paying wife $300 a month in pre-divorce spousal support, and that he was paying $516.32 a month for her car payment and car insurance. Husband testified that he was paying for and maintaining wife's health insurance. He testified that in the three years since they have been separated he has paid her $69,423.52. He testified that the total support he currently provides to wife reduces his take-home pay by almost 50 percent. Husband testified that, at the time of trial, wife was thirty-nine years old, and that she does not suffer from any debilitating physical or mental illness that would prevent her from maintaining a full-time job. He testified that, during their marriage, they lived a modest lifestyle.

Husband testified that his mortgage increased from $600 to $1,200, because he sold his previous home and moved into a larger one to accommodate his fiancée, her children, and his own children. He testified that he changed residences after the mediation between husband and wife had concluded, because he thought that the matter was also concluded. He testified that he and his fiancée pay their own bills and that the affidavit he submitted covered only his own expenses and income. Husband estimated that his fiancée contributes about $200 to the mortgage per month; he testified that they share a bank account, and that he pays all of their utilities.

In addition to the $69,423.52 husband already paid to wife, husband testified that he was willing to continue to provide support for wife as she transitioned out of the marriage. He testified that he was willing to pay a combined total of five years of alimony. He testified he would continue to pay wife's car payment and insurance until the remaining $18,000 on the loan is paid off in 42 months. He testified he would maintain her health insurance through his employment for an additional two years following the divorce to give her time to obtain her own.

On July 14, 2017, a final decree of divorce was entered by the trial court. Therein the court granted husband and wife the divorce. It affirmed the permanent parenting plan in full, and affirmed the marital dissolution agreement, as it related to the terms regarding division of marital assets and debt. It incorporated both into its final order by reference. The court determined that all of wife's sworn expenses were valid and that she was an economically disadvantaged spouse. It held that husband could afford to pay wife alimony. The court stated that the husband and wife had contemplated a long-term alimony award for wife in their previous agreements, and it decided to award wife alimony *in futuro*. It required husband to pay wife $905 a month in alimony for a period of 42 months and $600 per month thereafter, and to continue to pay wife's motor vehicle payment and motor vehicle insurance.

## II.

Husband argues on appeal that the trial court abused its discretion in determining the amount and duration of alimony it awarded to wife.

## III.

Appellate courts decline to second-guess a trial court's decision regarding spousal support absent an abuse of discretion. ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 108 (Tenn. 2011) (citations omitted). This is because the decision to award spousal support is factually driven and involves the careful balancing of many factors. *Id*. However, when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice, it abuses its discretion, and a reversal of its decision is warranted. *Id*.

"The statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term spousal support." *Id*. (citing Tenn. Code Ann § 36–5–121(d)(2)–(3); ***Bratton****,* 136 S.W.3d at 605; ***Perry v. Perry****,* 114 S.W.3d 465, 467 (Tenn. 2003)). "Alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." ***Gonsewski v. Gonsewski***, 350 S.W.3d at 109. Alimony *in futuro*, as stated by our Supreme Court:

> is intended to provide support on a long-term basis until the death or remarriage of the recipient. Tenn. Code Ann. § 36–5–121(f)(1). This type of alimony can be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." ***Id. See also Burlew****,* 40

S.W.3d at 470–71; *Riggs v. Riggs*, 250 S.W.3d 453, 456 n. 2 (Tenn. Ct. App. 2007). Alimony *in futuro* is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

Tenn. Code Ann. § 36–5–121(f)(1).

> Alimony *in futuro* "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs*, 250 S.W.3d at 456 n. 2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson*, 76 S.W.3d at 340. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard*, 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle...." *Id*. It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." *Robertson*, 76 S.W.3d at 340.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 108 (Tenn. 2011).

Instead of alimony *in futuro*, courts may award a spouse transitional alimony. Transitional alimony is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce. *Id.* at 109. A marital dissolution agreement between parties serves as "merely evidential in value and may be followed by the Court in its award of alimony." *See* **Osborne v. Osborne,** 197 S.W.2d 234 (Tenn. Ct. App. 1946).

## IV.

## A.

After a thorough review of the record and reviewing the evidence in the light most favorable to the trial court's decision, we conclude that the trial court abused its discretion in awarding alimony *in futuro* to the wife. As elaborated on below, the court's findings that there were both no proof that wife is underemployed and that there was no testimony or proof offered by the husband that the wife can be rehabilitated, is simply not supported by the record. Therefore, the trial court abused its discretion, because it based its decision on a clearly erroneous assessment of the evidence. *See **Gonsewski v. Gonsewski***, 350 S.W.3d at 105.

The trial court held that the affidavits of the parties supported a long-term award of alimony for the wife, because she is an "economically disadvantaged spouse pursuant to T.C.A. § 36-5-121(f)." It held that:

> an award of alimony in futuro is appropriate in this case, taking in consideration the agreement of the parties, the needs of the Defendant, the ability to pay of the Plaintiff, as well as the factors listed in T.C.A. §36-5-11(i) (sic). The relative earning capacity of the Plaintiff is significantly higher than that of the Defendant. The Defendant is in need of assistance long-term in order to meet her monthly obligations. The Plaintiff has a higher degree of education than that of the Defendant. There was no proof offered to the court to show that Defendant has the ability or opportunity to secure education or training to improve her earning capacity, pursuant to T.C.A. §36-5-111(i)(2) (sic).

> \*    \*    \*

> [wife's] previous employment at United Parcel Service during the marriage was at a rate of pay similar or less than what her current income (sic). Thus there is no proof before this court that the [wife] is underemployed.

-6-

Contrary to the trial court's holding, wife testified to her underemployment both in terms of the position she holds and the amount of hours she is working. She testified she is currently employed at Bojangle's and that she derives an additional source of income in the evenings from the residence in which she lives for free. She testified that she only worked every other week at Bojangle's, that she could be working more hours, that she had the capacity to work more hours, and that she intended to work more hours once the school year started:

> I could take on more hours, and I plan to when the school year starts back up. Bojangle's will put me on the schedule while the kids are in school, but it will not interfere with my ability to pick them up.

In addition, she testified that she previously managed a UPS store; she did not testify that she currently holds a management position. Therefore, testimony was elicited from wife indicating that she is not working as often as she is able, and that her work experience includes the skills and experience necessary to manage a store. Her managerial experience and ability to increase her current work hours demonstrates that wife can improve her "earning capacity to a reasonable level" without additional training. *See* Tenn. Code Ann. § 36-5-121(i)(2) (2018).

Wife has three children, and she shares custody with father. The parties' children were born in 2001, 2005, and 2008; they are all therefore school-aged. Importantly, we note that wife testified that working more hours would not interfere with her ability to care for her children. *See* Tenn. Code Ann. § 36-5-121(i)(6). The record also does not indicate that wife is physically or mentally unable to continue to work, to progress to a full-time schedule, or even obtain a new position if she desires. *See* Tenn. Code Ann. § 36-5-121(i)(4-5). She was also the relatively young age of thirty-nine at the time of the divorce filing in 2015. *See* Tenn. Code Ann. § 36-5-121(i)(4).

Based on the foregoing, a review of the relevant factors enumerated in Tenn. Code Ann. § 36-5-121(i) and of the record does not support the trial court's decision that a long-term award of alimony to wife is necessary. We hold that wife's ability to be self-sufficient is not only feasible but likely. Accordingly, the court abused its discretion in awarding wife alimony *in futuro*. We reverse the trial court's July 14, 2017 final decree of divorce to the extent it awards wife alimony *in futuro*.

**B.**

Having reached the above conclusion, we nonetheless find that an award of transitional alimony would be proper. As noted elsewhere in this opinion, the statutory framework permits an award of transitional alimony when the court finds that

rehabilitation is not necessary, but that the spouse may need aid in the transition to the status of a single person. *See* Tenn. Code Ann. § 36-5-121.

While concluding that wife is able to be self-sufficient, we acknowledge that she has likely come to rely upon husband's substantial contributions in several areas of her life. We are not inclined to end those immediately. Therefore, we direct that the trial court enter an order awarding wife transitional alimony in the amount of $600 per month for a period of five years, or until husband dies, or wife dies or remarries, whichever comes first. The trial court is directed to ascertain, for how many months, husband has already been paying wife alimony in any form. The total of those months will be deducted from the 60 months and husband will pay his obligation to wife for spousal support for the remaining months. The trial court is also directed to order husband to continue to pay wife's motor vehicle loan and her motor vehicle insurance, in addition to and independent of the $600 per month previously ordered, until the loan on the motor vehicle is extinguished or until husband dies, or wife dies or remarries, whichever comes first. This opinion is in no way to be interpreted as disturbing any permanent parenting plan agreement or any child support payment.

## V.

The judgment of the trial court is modified, and, as such, is affirmed. This case is remanded to the trial court with instructions. Costs on appeal and at the trial court level are taxed to the appellee, Jessica Ann Calfee Finstad.

_____
CHARLES D. SUSANO, JR., JUDGE