IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2024 Session

**VICKEY J. COWAN v. JIMMY COWAN**

**Appeal from the Circuit Court for Smith County**
**No. 2021-CV-39     Clara W. Byrd, Judge**

_____

**No. M2023-00746-COA-R3-CV**
_____

This appeal concerns the division of marital property, and an award of alimony entered as part of a final decree of divorce. For the reasons stated herein, we vacate the trial court's judgment with respect to both subjects and remand the case for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and KRISTI DAVIS, JJ., joined.

Adam Zanetis, Franklin, Tennessee, for the appellant, Jimmy Cowan.

Christopher Beauchamp, Lebanon, Tennessee, for the appellee, Vickey J Cowan.

**MEMORANDUM OPINION[1]**

This is a divorce case between Vickey J. Cowan ("Wife") and Jimmy D. Cowan ("Husband"). Given the nature of our disposition in this appeal, which includes a remand for further findings and consideration, we need not delve deep into the background of the case within the current Opinion. Appropriate for our present emphasis are the holdings of the trial court concerning cattle owned by the parties (and income derived therefrom) and

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

alimony that was awarded to Wife. Both subjects, which are discussed below, are placed into issue by Husband.

Regarding the issue of the parties' cattle, which the trial court discussed in connection with its division of the marital estate, the trial court held in pertinent part as follows:

> The Court finds . . . the parties' cattle and cattle business to be marital interests. It finds that Husband should receive the cattle that have been named. These animals include the bulls, Pat, Pat 2 and Little Dave, and the cows, Big Red, Blackie, Rhonda, Spot Eye and Edwina. These cattle, because they have names are special to Husband and he should be able to keep them. The Court finds these cattle have a fair market value of $9,000.00. The Court finds that the parties own eleven (11) calves. The value of each calve is $850.00. The value of each bull is $1,500.00. The Court finds that the parties own twenty-two (22) cows with each having a value of $850.00.

Initially, we note that the trial court's order is incomplete in that it only deals specifically with the named cattle valued at a total of $9,000.00, allowing Husband to retain them. The disposition of the other cattle owned by the parties is not addressed.[2] Moreover, as an aside, we observe that the $9,000.00 in value for the named cattle does not itself appear to be accounted for in the "Master Property Division Chart" that the trial court included in the record.

The trial court's failure to clearly dispose of all the cattle alone justifies further action on its part, and under these circumstances, we conclude that it is appropriate to vacate the court's division of property and remand the case for further proceedings. In remanding the case, however, we find it important to acknowledge additional issues with the order transmitted to us in the present appeal. We touch on these issues below.

First, not only is the trial court's failure to adjudicate the rights in all the cattle notable (as it raises questions as to whether the court definitively effectuated a disposition of the "cattle and cattle business" it held were marital interests), so too is the trial court's failure to consider the factors of Tennessee Code Annotated section 36-4-121(c) incident to its property division. After all, such factors are supposed to guide a trial court's division of marital interests. *See* Tenn. Code Ann. § 36-4-121(c) (noting that, in making an

---

[2] It may be that the trial court intended for Husband to retain all of the cattle in connection with the court's contemplation that he would continue a cattle business he had operated adjacent to his primary employment. In this regard, we note that the trial court stated as follows at one point during the trial: "Now, on these cows, like I said, it's the Court's intention he be able to keep his cattle business, and I've awarded him those named cows worth 9,000, but somehow, she's got to -- what I'd like to do is just . . . him to keep all these cattle." Yet, as it is, the trial court confusingly only dealt with the named cattle in the divorce decree, leaving the disposition of the unnamed cattle technically unresolved.

equitable division of marital property, the court "shall consider all relevant factors," including those listed in the statute). Wife has acknowledged the trial court's failure in this regard in her briefing,[3] and in connection with our remand of the case, we direct the trial court to make specific findings relative to these statutory factors. *See Hill v. Hill*, 682 S.W.3d 184, 205 (Tenn. Ct. App. 2023) (vacating the overall marital property distribution and remanding with instructions for the trial court to make specific findings of fact and conclusions of law in accordance with section 36-4-121(c) and Rule 52.01 of the Tennessee Rules of Civil Procedure); *Kerley v. Kerley*, No. E2022-01206-COA-R3-CV, 2024 WL 3443463, at *4-6 (Tenn. Ct. App. July 17, 2024) (noting that, although courts have wide latitude in fashioning an equitable division of property, their decisions must be guided by the statutory factors and holding that "because the trial court did not include an analysis of the relevant factors, we cannot determine whether the trial court applied the correct legal standard . . . [but] [i]nstead . . . are 'left to wonder' on what basis the trial court reached its ultimate decision").

Second, we observe that the trial court went on to include an additional provision in the final decree concerning the cattle, albeit not one that directly assigned the unnamed cattle to either party. Specifically, the trial court ordered that Husband pay Wife $666.67 per month for seven years "beginning on the first day of the month after Wife vacates the marital residence." Ostensibly, this award was not spousal support—another provision by the trial court dealt with alimony—but rather, the $666.67 monthly figure was stated to represent Wife's "[one-half][4] share of the cattle sales business." We are of the opinion that this additional provision regarding the parties' cattle prompts several concerns.

From a broader perspective, the divorce decree itself is, in its totality, confusing as to what the trial court was attempting to accomplish. Indeed, on the one hand, the trial court disposed of some cattle as noted above, but it did not provide for disposition of the majority of the parties' cattle. Although this partial award of cattle within the text of the court's order suggests, at least on its face, that the court was initially attempting to divide the parties' interest in the cattle by simply doing that—placing a monetary value on the cattle[5] and awarding individual cattle to one party or the other[6]—the foundation of the

_____

[3] For instance, Wife states: "Wife . . . concedes that neither in its summation/oral ruling nor the subsequent *Final Decree of Divorce*, did the trial court articulate specific findings applying the factors provided in Tenn. Code Ann. § 36-4-121."

[4] The origin of the $666.67 monthly figure rests in, as discussed herein, an income and expense statement submitted by Husband, and at trial, Husband testified the figure was "based on half" of the cattle sales.

[5] During the trial, it was openly discussed by the trial court that the total value of the cattle was $32,550.00.

[6] Dividing the parties' interest in the cattle in such a fashion would be entirely appropriate, and the trial court can do so in connection with our remand of the case. Of course, why the trial court disposed of the named cattle but did not directly provide for the disposition of the remaining cattle is unclear. Momentarily setting aside the confusion generated by the court's decision to award some cattle to Husband but not award the unnamed cattle to either party, the $666.67 monthly award clearly did not in any way

$666.67 monthly figure is purportedly based, as noted above, on a half share of "the cattle sales business."

Setting aside the confusing nature of the interplay between this award and the court's decision to award some cattle to Husband but not award the remaining cattle to either party, several things should be noted about the $666.67 monthly figure that was purportedly to account for Wife's share of the "cattle sales business." One, there was no actual valuation of the cattle business as an enterprise. Rather, the court simply pulled the $666.67 figure from an average amount attributable to half of the cattle sales that appeared on an income and expense statement,[7] and then used that figure and ordered it be paid to Wife until, evidently, she would draw Social Security.[8] The trial court initially remarked during the trial that this award to Wife was "not alimony" and at another point remarked that the award was "her share of the cows," but it also referenced the award as something that would "give[] her some income to help her out." As discussed *infra*, the trial court was ultimately somewhat equivocal as to the underlying legal premise undergirding the award toward the close of trial since it stated as follows when Husband's trial counsel suggested that the award should "almost have to" be categorized as alimony: "I don't mind. I can do it either way."

Two, whereas the trial court's award appears to contemplate that this $666.67 figure reflects a projected half share of profits from cattle sales, the record clearly undermines the appropriateness of viewing the $666.67 figure through that lens. Considerable confusion appears to have been generated by the fact that Husband's income and expense statement referred to Husband's "net take home total" in connection with his income.[9] The trial court, for instance, stated at one point during the trial: "[Y]ou know, he's spending all this money on the farm, so you realize he testified these are net, is what he makes, not gross. This is after expenses are taken out." However, a closer inspection of Husband's income and expense statement, as well as his testimony, reveals this to not be the case. The income and expense statement, for instance, does not support the notion that the $666.67 figure was actually reflective of net profits on the cattle operation, as the income and expense statement also contains a listed co-op fee regarding "food for livestock," something that is

provide Wife with a one-half share of the total value of the cattle. As referenced in the previous footnote, the value of all of the cattle, after all, totaled only $32,550.00. Wife's monthly award of $666.67, on the other hand, would total over $56,000.00 over the contemplated seven year payment schedule.

[7] As noted in a previous footnote, Husband testified that the $666.67 monthly average was estimated to be his "half."

[8] During the trial, when a complaint was raised by Husband's trial counsel that the court was in effect forcing his client to keep his cattle operation going for several years so as to pay the $666.67 monthly figure on an ongoing basis, the court responded as follows: "Yes, well, until they both start drawing their social security." That the trial court was not actually valuing a cattle "business" incident to its award of the $666.67 figure is further evident in the fact that certain equipment, such as a "Cattle Trailer," was disposed of separately in the order.

[9] Certain payroll deductions from his employment had been used to arrive at his "net take home total."

demonstrably not baked into the $666.67 figure given the structure of the income and expense statement  Further, although Husband's testimony referred to the $666.67 figure as "net," it appears to us from the context of his testimony that he was referring to what he receives by way of a check after proceeds from a cattle sale are split between him and Wife, "after the commission takes theirs out."[10]  Consider the following exchange between Wife's counsel and Husband:

> Q.  If I may ask, since you mentioned that your cattle sales, that number, because it's a tongue-twister to keep saying -- we'll say six and two-thirds hundred dollars is half.  Does the $541.67 reflect half?
>
> A.  That's for -- without taking the expense, the feed and everything, that's just -- **that's net.  That's after the commission takes theirs out.**  *No, that's not counting your feed, your hay, and all that*.  That's --
>
> Q.  And, again, I --
>
> A.  **You ain't going to have that.  I mean, how are you going to have that, everything?  You got feed.**  I've not even bought the feed that I've been buying because it's so high.  I mean, I don't get where this is coming from.
>
> Q.  And, again, I'll reiterate what I said this morning.  Sometimes I ask really bad questions and the person listening doesn't understand.[11]  My question was, the $541.67 that's related to the bush-hogging, that is not divided in half; correct?
>
> A.  No, that's after expenses.  Yeah.
>
> Q.  But the cattle sales is?
>
> A.  That's net.  That's everything.  That's what they did.  **When you go over there and get a check, when she gets half -- when they split the check, that's what they split**.

(Emphases added).  Admittedly, the exchange is somewhat confusing, but at a minimum— and as is certainly evident through Husband's income and expense statement—it appears that the represented $666.67 figure does not account for cattle feed expenses.

---

[10] And again, the income and expense statement—since it includes at least one expense related to the cattle under miscellaneous expenses—undermines the understanding that all expenses relative to the cattle operation were accounted for when arriving at the $666.67 monthly figure.

[11] Clearly Husband's response, inasmuch as he had referenced "feed," had been in reference to the cattle sales component of counsel's initial question and not the bush-hogging component that counsel intended to prompt by way of the reference to the "541.67" figure.

Further, and providing additional indication that the $666.67 figure does not accurately reflect an average half share of profits from Husband's cattle dealings, the evidence before the trial court calls into question the general profitability of Husband's cattle operation. Tax returns for the parties that were submitted at trial, for instance, showed consistent, and *significant*, losses relative to the cattle operation. The trial court itself acknowledged this during trial, even referencing that Husband "blows money on cattle," and further stating as follows: "I'm surprised the IRS hasn't declared a hobby farm because he's not really making a profit on it, and I think cows are expensive, and farming isn't that lucrative anymore. But that's his hobby. That's what he loves, evidently, or he wouldn't do it. That's his spare time."

Aside from the fact that, as discussed above, the awarded $666.67 monthly figure is not actually supportable as a half share of supposed net profits Husband derives from the cattle operation, we note that counsel for Wife acknowledged at oral argument that he had done exhaustive research to find a case similar to, and permitting, what the trial court did here concerning its attempted disposition of an interest in the cattle, but that he had not found any. The trial court's order, in effect, was requiring Husband to maintain his cattle business, operate it, and allow Wife to share in supposed profits post-divorce for a defined term by way of the monthly $666.67 award. When discussing the issue of the cattle during the trial, the court stated to Husband, "You can sell your cows every year. You can replace your cows; you can sell them." The burden was Husband's alone to bear, and the trial court was clearly envisioning that Wife would, in essence, share in the purported profits Husband would earn, even from property he obtained after the marriage ended.

For the reasons covered in our foregoing discussion, the monthly $666.67 award does not appear to be grounded in the value of the cattle owned when the parties divorced or in any type of actual valuation of Husband's cattle operation as an enterprise. Rather, Husband was simply ordered to pay that amount to Wife for seven years. Although the trial court initially framed the award as "not alimony" during the trial, it certainly did not seem to have a firm conviction at the close of trial that its award was, in fact, some type of property division interest. Indeed, as referenced earlier, when Husband's trial counsel suggested that the award should "almost have to" be categorized as alimony, the court responded, "I don't mind. I can do it either way." The trial court and the parties' counsel then began to contemplate on the record what the tax consequences might be if the $666.67 monthly award was awarded as alimony. For instance, Wife's counsel stated as follows in apparent reference to this $666.67 monthly award and another $600.00 monthly figure that the court did award to Wife as alimony: "If it's cleaner for the record and cleaner for the Court, $1,266.77[12] as alimony for the next seven years, I don't see the difference. Either way, it's going to have to be claimed as income for [Wife]." The trial court subsequently

---

[12] The $1,266.77 figure of course deviates only slightly from the sum of $666.67 and $600.00 ($1266.67).

stated to "check with your accountant" and further offered that it would let the parties "argue it another day" if they "don't want to finalize this."

Another curious aspect of the $666.67 monthly award relates to its interplay with an additional provision in the final decree: that, depending on whether Husband elected to retain ownership of the parties' real property, the parties could be ordered to list the real property for sale. Thus, whereas the $666.67 monthly award appears to be predicated upon the assumption that Husband will be able to continue his cattle operation and do so profitably, the final decree leaves open the possibility that a base of Husband's cattle operations could cease to exist. This is an issue that was broached by the trial court directly toward the close of trial, with the court stating, "And if I sell [the real property], then I'll have to sell the cows too because he won't have another place to put them." The trial court had even stated, "I can't finalize it until I know what he wants to do." Yet, the ultimate divorce decree does not account for this nuance that had been in the contemplation of the court. Husband was simply ordered to pay Wife $666.67 per month for seven years.

Considering all of the issues and concerns referenced above, the trial court's division of the marital estate must be vacated,[13] and the case is hereby remanded for, in part, a clear disposition of *all* of the parties' cattle in connection with the trial court's division of the marital estate. The disposition of the cattle, as with all of the parties' marital interests, should be grounded in the evidence that is before the court, and to this end, we call the trial court's attention to its own observation during the trial—that it personally memorialized in a handwritten exhibit entered into the record—that the cattle were collectively valued at a total of $32,550.00. Incident to the trial court's disposition of the parties' interest in all the cattle and its overall division of the marital estate, the trial court should consider the statutory factors in Tennessee Code Annotated section 36-4-121(c) that, under its current order, are not addressed.

Because of the need for further findings and proceedings regarding the disposition of the parties' marital property interests, we must also vacate the trial court's alimony award, which, as referenced earlier, was in the amount of $600.00 per month. *See, e.g.*, *Beyer v. Beyer*, 428 S.W.3d 59, 84 (Tenn. Ct. App. 2013) ("In light of our remand to the trial court to reconsider its distribution of the parties' marital estate . . . the trial court must reconsider its awards of alimony as well."); *Durunna v. Durunna*, No. M2022-00415-COA-R3-CV, 2024 WL 1448142, at *4 (Tenn. Ct. App. Apr. 4, 2024) ("Although Wife has raised an issue concerning the alimony awarded to Husband, the need for the trial court to reconsider its division of the marital estate necessitates that we vacate the award of alimony."). In connection with our decision to vacate the trial court's award of alimony, however, we are of the opinion that a couple of additional comments are appropriate. First, we observe that, although the trial court labeled Wife's award of alimony as alimony in

_____

[13] This includes the $666.67 monthly award that, under the court's current order, supposedly represents Wife's share of the cattle sales business.

futuro, it also stated that the monthly $600.00 alimony payment shall be made to Wife for seven years. If, on remand, the trial court deems an award of alimony in futuro is appropriate, we note that such an award is, by its very nature, modifiable. *See Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001) (noting that alimony in futuro is "indefinite and modifiable"). A fixed term is thus not consistent with an award of alimony in futuro. *See Cole v. Cole*, No. M2006-00425-COA-R3-CV, 2008 WL 1891436, at *6 (Tenn. Ct. App. Apr. 29, 2008) ("Because the . . . payments were for a fixed term . . . that award is not considered alimony *in futuro*, but it constitutes financial support, and a form of alimony . . . .").

In addition, we observe that the trial court's current order does not contain a specific discussion relative to the factors of Tennessee Code Annotated section 36-5-121(i). Under section 36-5-121(i), trial courts are to "consider all relevant factors," including the factors listed therein, when "determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment." Tenn. Code Ann. § 36-5-121(i). To be fair, the trial court's order does reflect that it generally took the needs of Wife and Husband's ability to pay financial support into account, and such considerations are without question the two most important factors that should be considered in connection with a spousal support issue. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) ("[T]he two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay."). On remand, however, the trial court should make specific findings concerning any relevant factors under section 36-5-121(i), as its failure to do so could thwart any future appeal that might ensue over a determination concerning alimony. *See Kerley*, 2024 WL 3443463, at *9 ("[W]e vacate the trial court's award of transitional alimony to Wife and remand the issue of spousal support to the trial court for sufficient findings of fact and conclusions of law and for consideration of the relevant statutory factors.").

Finally, we note that both parties have requested an award of attorney's fees in connection with this appeal. In the exercise of our discretion, we respectfully deny both parties' requests.

To summarize, we vacate the trial court's division of the parties' marital estate, as well as its award of alimony to Wife. These issues should be reconsidered on remand, and the trial court's order on remand should include appropriate findings of fact and conclusions of law consistent with our discussion herein. The case is hereby remanded for further proceedings consistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE