IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 29, 2023 Session

## AUGUSTINA C. DURUNNA v. NELSON I. DURUNNA

**Appeal from the Circuit Court for Davidson County
No. 19D-650 Phillip R. Robinson, Judge**

_____

### No. M2022-00415-COA-R3-CV
_____

This is a divorce case where the wife has raised several discrete issues on appeal. Although certain of her assertions are without merit, we agree with the wife that the trial court erred in failing to account for certain real property located in Nigeria. Thus, the marital estate division is vacated, and the matter is remanded so that the trial court can account for the Nigerian real property highlighted herein. As a result of our disposition on that issue, as well as other concerns, we also vacate the trial court's award of alimony to the husband.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Vacated in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Morgan E. Smith,[1] Nashville, Tennessee, for the appellant, Augustina C. Durunna.

Justin Walker,[2] Nashville, Tennessee, for the appellee, Nelson I. Durunna.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This is an appeal from a divorce proceeding between Augustina Durunna and Nelson Durunna. For ease of reference and clarity, Ms. Durunna and Mr. Durunna will be referred to herein as "Wife" and "Husband," respectively.

---

[1] Ms. Smith did not represent Ms. Durunna in the trial court.

[2] Mr. Walker entered a notice of appearance on behalf of Mr. Durunna, but he did not timely submit a brief. In a per curiam order entered on December 19, 2022, this Court ruled that "this appeal shall be submitted to the Court for a decision without a brief on behalf of the appellee." We further held that "[t]he appellee shall not be allowed to present oral argument."

Although both Wife and Husband are originally from Nigeria, they were married in Arkansas in 1998. The parties' first child was born in 1999. Multiple other children were thereafter born during the marriage, but no custody or parenting time concerns are at issue in this appeal.

Wife is a nurse and was the "breadwinner" for the family throughout the marriage, although the trial court found it to be an accurate statement that Husband "has always done something to earn income and to make a contribution to the support of the family." On a couple of occasions during the early years of the marriage, Husband worked for Hertz Rental as the service department supervisor. In the later years of the marriage, Husband operated an office cleaning business franchise.

During the course of the marriage, the parties relocated from Arkansas to Tennessee. Eventually, on April 5, 2019, Wife filed a complaint for divorce alleging irreconcilable differences and inappropriate marital conduct. Husband also sought a divorce and alleged the same grounds.

The ensuing divorce trial took place over multiple dates in 2021, and on November 29, 2021, the trial court entered its final decree of divorce. In pertinent part, the trial court declared the parties divorced pursuant to Tennessee Code Annotated section 36-4-129, made various provisions for the allocation of the parties' assets and debts, and awarded Husband alimony in futuro in the amount of $815 per month. This appeal followed.[3]

## ISSUES PRESENTED

In her appellate brief, Wife presents several issues for this Court's review. First, Wife challenges the trial court's award of alimony in futuro to Husband. Second, Wife asserts that the trial court erred in declaring the parties divorced in lieu of granting her a divorce on the ground of inappropriate marital conduct. Third, Wife submits that the trial court erred in its valuation of the marital residence. Fourth, Wife asserts error in relation to how certain taxes connected to retirement account withdrawals were assessed to her. Fifth, Wife asserts error in the trial court's failure to address Nigerian property as part of the distribution of the marital estate. Wife also raises an issue concerning appellate attorney's fees.

## DISCUSSION

Before beginning our review of the above issues, it is important to keep in mind that the resolution of certain issues in a divorce proceeding can affect the consideration of

---

[3] The filing of the notice of appeal itself followed the trial court's decision to largely deny a Rule 59 motion filed by Wife. Wife was granted limited relief in connection with her filing of a Rule 59 motion, namely in relation to an issue involving child support arrearage.

others. As this Court has previously explained:

> The dissolution of a marriage requires the courts to engage in the orderly disentanglement of the parties' personal and financial affairs. Many of the issues that must be addressed during this process are interrelated, and the disposition of earlier issues directly influence the decision on later issues. Accordingly, the parties and the courts should pay careful attention to the order in which the various issues in a divorce case are addressed and decided.
>
> As a general rule, the first issue considered in a divorce case concerns whether either or both parties have demonstrated that they are entitled to a divorce. Thus, at the outset, trial courts should first determine to whom the divorce should be awarded or whether the parties should be declared divorced in accordance with Tenn. Code Ann. § 36-4-129 (1996). Following this decision, trial courts should turn their attention to the custody and visitation arrangements for the children if the parties have minor children entitled to support. Only after these status issues have been decided should trial courts turn their attention to the financial aspects of the divorce decree.
>
> The trial court's first task following the resolution of the status issues is to identify and distribute the parties' separate property and then to divide their marital property in an equitable manner. As part of this process, the trial court should also identify and allocate the parties' separate and marital debts. Sorting out the parties' property interests must precede support decisions because the manner in which the separate and marital property is divided can affect later support decisions.
>
> After the parties' property interests have been addressed, trial courts should then turn their attention to child support. This is precisely what this court directed the trial court to do in its first opinion in this case. Child support decisions should precede decisions about spousal support because a spouse's ability to pay spousal support may be directly and significantly influenced by the amount of child support he or she has been ordered to pay.
>
> Consideration of spousal support questions should follow the disposition of all the preceding questions. Once a court has determined whether spousal support should be awarded, and if so its nature, amount, and duration, it should, as a final matter, address any request for attorney's fees if such request has been made.

*Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998) (internal citations omitted).

- 3 -

With the above principles in mind, we do not address Wife's concerns in the precise order in which she raises them. Indeed, rather than beginning our substantive review with Wife's first designated issue, which concerns alimony, we initially focus our attention on Wife's raised issue pertaining to the trial court's declaration of divorce.

### *Whether the Trial Court Erred in Declaring the Parties Divorced*

Wife asserts that the trial court erred in failing to grant her a divorce due to inappropriate marital conduct of Husband. We need not tarry long on this issue. The trial court noted that each party had "grounds for divorce against the other," and citing Tennessee Code Annotated section 36-4-129, it therefore simply decided to declare the parties divorced. Although Wife broadly argues the trial court's decision to declare the parties divorced was an abuse of discretion, we respectfully disagree. Tennessee Code Annotated section 36-4-129, which Wife does not engage with at all in her appellate brief, provides clear support for the trial court's action. In relevant part, the statute states that "[t]he court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone." Tenn. Code Ann. § 36-4-129(b); *see also Hill v. Hill*, No. M2001-01016-COA-R3-CV, 2002 WL 31863295, at *3 (Tenn. Ct. App. Dec. 23, 2002) ("Even if the evidence supported a finding that only one party was guilty of inappropriate marital conduct, the court still had authority to declare the parties divorced."). This issue is without merit.

### *Valuation of the Marital Residence*

We next address Wife's contention that the trial court erred in its valuation of the marital residence in Tennessee. We need not spill much ink over this issue either. The Tennessee marital residence was valued at $356,767.00, and the trial court's order reflects that this finding was derived by averaging the values presented from the following sources of evidence: Wife's expert's appraisal of $302,000.00, the tax assessor's appraisal of $396,300.00, and Husband's opinion that the home was worth at least $372,000.00. As we understand Wife's argument, the tax appraisal was supposedly insufficient evidence, and we note that Wife reasons in her brief that the trial court should have given "more weight" to her expert's valuation. Respectfully, we find no error in the trial court's valuation. It should be noted that Wife's argument on this issue does not point to any place in the record where an objection was made regarding the competency of Husband's evidence. Further, it should be noted that, at the oral argument of this matter, Wife's counsel agreed that there was not an objection regarding the competency of this valuation evidence at trial.[4] In light

---

[4] Although Wife's brief cites a case from Alabama in the attempt to support her contention that a tax appraisal is insufficient evidence, Wife fails to mention that, even under the case she cites to, it was held that a party had "waived the inadmissibility of the . . . tax notice by failing to move to strike it." *Berry*

- 4 -

of this, and given that the value assigned to the residence fell within the range of the values presented through the proof, there is no reason to disturb the trial court's valuation on this matter. *See Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007) (noting that a court may place a value on property that is within the range of values represented by the evidence); *see also Barton v. Barton*, No. E2019-01136-COA-R3-CV, 2020 WL 6580562, at *9 (Tenn. Ct. App. Nov. 10, 2020) ("There were two conflicting values presented with respect to the real property: Husband's opinion and the tax appraisal values presented by Wife, which were admitted into evidence without objection. Both were proper evidence of value that the court was permitted to consider.").

*Nigerian Property Issue*

Notwithstanding the absence of error concerning the trial court's valuation of the Tennessee marital residence, there is a remaining question of whether all of the parties' property holdings were properly accounted for in the marital estate division. Indeed, one overarching issue in this case has been the parties' interests, or lack thereof, in certain Nigerian property. It is Wife's contention that the parties own multiple properties in Nigeria and that these properties should have been addressed in the estate division.

There is no question that the law permits foreign property to be considered in an estate division, as we noted recently in another divorce appeal that involved marital property located in the Gaza Strip:

> While "a court of one state is without jurisdiction to pass title to lands lying wholly in another state" and, thus . . . "[t]he local court cannot by its decree bind [such] land," it is well-settled that, "in a proper case, with the necessary parties before the court, a decree in personam may be properly passed requiring a party defendant holding the legal title in trust, or otherwise, to transfer such title in accordance with the decree of the court. *Cory v. Olmstead*, 154 Tenn. 513, 290 S.W. 31, 32 (Tenn. 1926).

*Sekik v. Abdelnabi*, No. E2019-01302-COA-R3-CV, 2021 WL 120940, at *8 (Tenn. Ct. App. Jan. 13, 2021); *see also Trivette's Estate v. Trivette*, 564 S.W.2d 672, 675 (Tenn. Ct. App. 1977) (noting that although "our courts are without jurisdiction to pass title to lands lying solely within another state," "[t]he courts of this state may require a person within its jurisdiction to execute a deed to property lying outside of the state"). Here, however, the trial court refused to take account of any of the claimed Nigerian properties, noting that it found the evidence "so lacking that the Court can make no finding of ownership by either party." Respectfully, to the extent that the trial court refused to take account of one particular property in Nigeria, which we will commonly refer to as the "Bungalow

---

*v. Deutsche Bank Nat'l Trust Co.*, 57 So.3d 142, 149 (Ala. Civ. App. 2010) (reviewing the matter at the summary judgment stage).

Property," we are of the opinion that the court erred, as the evidence preponderates in favor of a finding that this property is owned by the parties.[5] Although Husband claimed, generally, not to know anything of the claimed Nigerian properties discussed by Wife in this case, he noted that the Bungalow Property was an exception. Husband also testified that he believed proceeds from the parties' prior Arkansas residence were used towards purchasing Nigerian property. Further, during the course of trial, Husband was asked about one of his interrogatory responses wherein he had designated property in Nigeria; as relayed during the trial, the interrogatory had asked Husband to describe the real property he owned, including outside the United States. After attempts were made at trial to clarify the specifics of Husband's response, as well as further testimony he offered on the general subject matter, the trial court stated as follows: "Okay. I understand now. All right. So he meant his father's house that he inherited and the bungalow that he apparently thought they owned an interest in." Evidence was also offered showing how Husband had pursued an eviction action in Nigeria concerning the Bungalow Property. Husband acknowledged he had pursued the eviction action. Of course, consistent with Husband's belief of ownership of the Bungalow Property and action taken in accordance therewith, Wife testified that the parties owned the Bungalow Property and provided testimony as to its value. Moreover, consistent with Husband's expressed belief regarding the proceeds from the former Arkansas residence, Wife testified that the Bungalow Property had been purchased with proceeds from the former Arkansas residence. Because the evidence preponderates in favor of a finding that the Bungalow Property is a marital asset owned by the parties and it has not been accounted for, we vacate the trial court's division of the marital estate and remand the matter for the trial court to take the Bungalow Property into consideration.[6] Once all marital property of the parties is properly taken into consideration,

---

[5] Although Wife has also attempted to put other Nigerian properties into issue, we note that her own brief appears to acknowledge on some level that there is a paucity of meaningful proof on anything other than the property we discuss herein. In relevant part, her brief refers to there being evidence of "not just of the existence of <u>at least *one* property</u> but also of the parties having received rental income from it during the marriage." (emphases added) As discussed in the succeeding footnote, however, under this Opinion, we encourage the trial court to consider on remand whether the parties have any interests in other Nigerian properties apart from the Bungalow Property. As discussed in our succeeding footnote, we do so in light of the fact that both parties have, in places, pointed to an understanding or belief that there are interests in other properties as well.

[6] We do not necessarily fault the trial court from failing to take other claimed Nigerian properties into account as marital property given the paucity of proof connected to them in this record. With that said, the record seems to suggest that there very well may be other properties in Nigeria in which the parties may have marital ownership interests. In fact, when Husband was asked at one point during the trial whether he believed that the proceeds from the Arkansas residence were used towards "these propertie**s** in Nigeria," (emphases added), he stated, "Correct." His trial counsel stated at the opening of trial that the Nigerian "properties" "is something to take into consideration," and during the trial, Husband testified that he wanted the properties if he was "part of them." When the trial court asked, "Well, are you part of it?" Husband responded that he thought so. Husband provided testimony that the properties were bought during the marriage, responding, "Correct," when he was asked about that matter by his counsel. Inasmuch as we have already vacated the estate division in order to take the Bungalow Property into account, and given that the parties have, in places, both pointed to an understanding or belief that there are interests in *other*

the trial court shall make an equitable distribution of the marital estate.

*Retirement Account Issue*

Wife also raises an issue connected to how the trial court handled her retirement account, which was a marital asset, in the estate division. Although the balance of her retirement account was less than three thousand dollars when the trial court's order was entered, the court noted that the account had been dissipated by Wife and that "Husband is entitled to his share of this dissipation." Of note, Wife's raised issue does not appear to be related to the dissipation finding itself. Rather, her complaint is that she was in effect held responsible for the tax liability associated with the early retirement account withdrawals implicated by her dissipation, which she submits rendered the estate division "no longer equal or equitable."

As a point of clarification, we note initially that Wife's brief appears to misrepresent what it purportedly attempts to put into issue. Indeed, in referencing the tax penalty supposedly associated with the 2019 withdrawals at issue, Wife mentions an amount of $4,668.12. Respectfully, the exhibit she cites to in support of this matter indicates that the $4,668.12 figure is in relation to the 2016 tax year, not 2019.[7] Regardless, inasmuch as Wife's concern through this issue relates to a supposed inequity in the marital estate division, we must take note of our prior disposition concerning the Bungalow Property. Given the need for that property to be taken into account as a part of the marital estate division, we have vacated the court's current division. Whether any specific decision of the trial court renders the estate division inequitable can only be determined after the division of the marital estate is reconsidered on remand.

*Alimony Issue*

Although Wife has raised an issue concerning the alimony awarded to Husband, the need for the trial court to reconsider its division of the marital estate necessitates that we vacate the award of alimony. *See Trezevant v. Trezevant*, 568 S.W.3d 595, 624 (Tenn. Ct. App. 2018) ("Because the trial court may award spousal support only after the court has equitably divided the parties' marital property, the awards of alimony are vacated and remanded for reconsideration in light of a proper valuation and distribution of the marital estate."); *Beyer v. Beyer*, 428 S.W.3d 59, 84 (Tenn. Ct. App. 2013) ("In light of our remand to the trial court to reconsider its distribution of the parties' marital estate, however, the trial court must reconsider its awards of alimony as well."); *Griffith-Ball v. Ball*, No.

---

properties as well, the trial court is encouraged to further explore the existence of other properties on remand in order to ensure that all interests of the parties have, in fact, been properly accounted for as part of the divorce. The trial court is, of course, free to consider further proof as part of its inquiry into this question.

[7] The misunderstanding surrounding this matter is likely attributable to the fact that the specific exhibit at issue, an IRS tax notice, bears a 2019 date. The notice plainly states, though, that it is in relation to the 2016 tax year.

M2020-00509-COA-R3-CV, 2022 WL 1509675, at *5 (Tenn. Ct. App. May 13, 2022) ("[A] new division of marital property is necessary. So, on remand, the trial court should also make a fresh determination on whether alimony is appropriate, and, if so, the type, amount, and duration of the award."). The issue of alimony is therefore remanded to the trial court for reconsideration in light of the court's division of the marital estate on remand, and in recognition of the fact that time has not stood still, we leave it to the trial court's discretion as to whether to reopen the proof on this issue. *See Cain-Swope v. Swope*, 523 S.W.3d 79, 100 (Tenn. Ct. App. 2016) ("[T]he award of alimony . . . is vacated and the case is remanded for reconsideration of the amount of alimony, if any, to be awarded. . . . Whether to reopen the proof concerning this issue is left to the discretion of the trial court."); *Lindsley v. Lindsley*, No. M2019-00767-COA-R3-CV, 2020 WL 7029361, at *11 (Tenn. Ct. App. Nov. 30, 2020) ("We are mindful of the fact that time does not stand still, and we leave it to the trial court's discretion as to whether it chooses to reopen the proof on this issue.").

Although the court's award of alimony is thus vacated and the issue of alimony is remanded for reconsideration, we find it prudent to make a couple of observations about the award we are presently vacating. Indeed, although we pretermit consideration of several discrete concerns raised concerning the trial court's findings given that this issue is subject to reconsideration and the trial court may, in its discretion, reopen the proof, we are compelled to note some broad concerns we have connected to the award we are vacating. First, in light of the particular findings that were included in the orders transmitted to us on appeal, we have concern that the trial court did not properly consider the question of Husband's need, which is the "threshold consideration" in any alimony inquiry. *See Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) (noting that, of the relevant alimony factors, "the disadvantaged spouse's need is the threshold consideration"); *see also Perkins v. Perkins*, No. W2021-01246-COA-R3-CV, 2023 WL 2446807, at *5 (Tenn. Ct. App. Mar. 10, 2023) ("The Tennessee Supreme Court has noted that the need of the spouse seeking support is the single most important factor when determining the amount of alimony . . . ."). Here, as noted earlier in this Opinion, the trial court's award to Husband was an award of alimony in futuro in the amount of $815 per month.[8] Within the divorce decree itself, the court had initially noted that Husband was left with a monthly shortfall of $915 per month, which was the difference between Husband's $3,070 in monthly expenses and a net income of "approximately $2,155." However, later in the decree, the trial court clarified that Husband had "slightly underreported his income" and that his "true need"

---

[8] This is what was actually awarded by way of direct language, although we note, as an aside, that the trial court's orders contain statements that add some slight confusion on the matter. Immediately prior to stating that it would award Husband monthly alimony "in the amount of $815 per month," the court had referenced that "Husband's true need is approximately $850 per month and the Court finds that the Wife has the ability to contribute *this* amount." (emphasis added). Of course, the court awarded what it awarded. Nonetheless, we additionally note that, in its order adjudicating Wife's motion to alter or amend, the trial court stated as follows: "Clearly, the Wife would have sufficient net income to pay the alimony award to the Husband of approximately $850 monthly."

was thus not $915 a month but instead was $850 per month. Confusingly, though, when the trial court discussed the amount of Husband's net income in its "Order on Plaintiff's Rule 59 Motion," the court listed his net income as being "approximately $2,605" per month. If Husband's net income is $2,605 per month, his true need is clearly in an amount significantly lower than the final decree admits.[9] Obviously the specifics of any alimony that might be awarded on remand will depend on whatever findings properly follow from the remand proceedings, but we simply note that the vacated monthly award did not appear to be appropriately responsive to Husband's need, at least as calculated from the finding made as to Husband's income in the court's Rule 59 order.

Turning to the type of alimony that was awarded to Husband, although trial courts certainly have broad discretion when addressing spousal support issues, *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011), an award of long-term support such as alimony in futuro is not legislatively preferred. As the Tennessee Supreme Court has explained,

> [t]he statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible. Thus, there is a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro. While this statutory preference does not entirely displace long-term spousal support, alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary.

*Id.* at 109 (internal citations omitted); *see also Andrews v. Andrews*, 344 S.W.3d 321, 342 (Tenn. Ct. App. 2010) (noting that an award of alimony in futuro is appropriate when the trial court finds there is relative economic disadvantage and that rehabilitation is not feasible). The failure to make the requisite findings to support an in futuro award is itself a basis to vacate such an award and remand the matter of alimony for reconsideration. *See, e.g.*, *Buntyn v. Buntyn*, No. W2016-00398-COA-R3-CV, 2017 WL 781724, at *3-4 (Tenn. Ct. App. Feb. 28, 2017) (vacating the alimony award and noting that "[b]ecause there is no finding that economic rehabilitation is not feasible and there is no finding that long-term support is necessary, the trial court's decision is without a proper foundation").

Here, having reviewed the record, we cannot discern where requisite findings were included by the trial court to support an award of in futuro alimony. Although we did locate a finding that appeared to partially broach the necessary rehabilitation inquiry,[10] we

---

[9] $2,605 in income minus $3,070 in expenses equals a shortfall of $465.
[10] The court made a finding that "additional education will [unlikely] be of any benefit to [Husband]."

- 9 -

have not been able to locate a specific finding that rehabilitation was not feasible, nor have we located a finding where the trial court specifically concluded long-term support was necessary. The absence of such findings presents an independent basis for reconsideration of the alimony inquiry even assuming we had not otherwise remanded the issue for reconsideration in light of our vacation of the estate division. In vacating the trial court's award of alimony and remanding for reconsideration of the type, duration, and amount of alimony, if any, to be awarded, we provide the trial court with the same instructions we have provided to trial courts in other appeals in like circumstances:

> The trial court should make factual findings as to Husband's need for alimony and Wife's ability to pay; mindful of the "statutory bias toward awarding transitional or rehabilitative alimony over alimony *in solido* or *in futuro*," *Gonsewski*, 350 S.W.3d at 109, the court should make findings as to whether rehabilitation of Husband is feasible, and if not, whether an award of transitional alimony is appropriate; if the court finds that transitional alimony is not appropriate, the court should then consider the nature and duration of long-term support. We leave to the court's discretion whether the parties should be permitted to introduce additional proof relative to these matters in light of the passage of time since entry of the decree and our disposition of this appeal.

*Donaldson v. Donaldson*, No. M2015-01035-COA-R3-CV, 2016 WL 3662305, at *4 (Tenn. Ct. App. June 30, 2016).

*Attorney's Fees Issue*

Although Wife's final issue on appeal raises the issue of appellate attorney's fees, with Wife noting that appellate courts have discretion to award attorney's fees in domestic relations cases and stating that she "would not oppose an award of attorney fees to herself," she also submits that, at a minimum, each party should pay his or her own attorney's fees. In the exercise of our discretion, we respectfully decline to award Wife any attorney's fees for this appeal.

## CONCLUSION

In light of the foregoing discussion, the judgment of the trial court is hereby affirmed in part and vacated in part, and the case is remanded for further proceedings that are consistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE
